## Case No. 10,237.

### In re NICHOLS.

[See 1 Fed. 842.]

NICHOLS (BAILEY v.). See Case No. 741.

## Case No. 10,238.

### NICHOLS v. BRUNSWICK.

[3 Cliff. 81.] [1]

Circuit Court, D. Maine. Sept. Term, 1867.

MUNICIPAL CORPORATIONS—STREETS OUT OF REPAIR—INJURY TO TRAVELLER—CONTRIBUTORY NEGLIGENCE—MEASURE OF DAMAGES.

1. The surface of a travelled street or highway, about two rods wide, in a village, was in all respects in good condition, and had been repaired from time to time by the town authorities. At a certain point by the side of the road was a cellar, about four feet deep, the line of the wall of which extended within the line of the street. No building had existed over the cellar for a period of about eight years, nor had the town, for about that period of time, erected or maintained any guard or railing against the excavation. Held, that this was not, under the statute of Maine, such a condition of repair as to be safe and convenient for travellers with teams, horses, and carriages.

2. An accident occurred at this point under the following circumstances: A person driving one horse in a chaise stopped near the cellar, and turned the animal to one side, in order to admit some one into the carriage. The driver then attempted to turn the horse sufficiently to bring him into the road, but the horse came back too far and began to back; he then slapped the animal with the reins to start him forward, and the horse stopped, but the rear wheels were then passing over the cellar-wall, and the plaintiff, in attempting to jump out was caught by the fender, and together with horse and vehicle fell into the cellar. Held, that these facts were not sufficient to establish the defence of want of the exercise of ordinary care on the part of the person injured.

3. Under these circumstances, plaintiff was entitled to recover damages against the town for the injuries received in consequence of a defective highway. As to the amount, the plaintiff is to recover a just compensation for his injuries, which are to be estimated by an examination of all the facts of the accident, and of the plaintiff's condition in consequence thereof. [Cited in Merrill v. Portland, Case No. 9,470.]

4. Mere opinions of physicians that ill health, subsequent to the injury, was occasioned by it, must be received with caution, and weighed in view of all the circumstances surrounding the case.

Trespass on the case [by Arthur B. Nichols] to recover damages on account of an injury received as alleged, through a defect in a highway, which the corporation defendants were bound by law to keep in repair. The injury was received on Pearl street, nearly opposite the dwelling-house of one Edward White, who lived on the northerly side of the street. The alleged defect consisted of a cellar nearly opposite White's dwelling-house. There was no fence or railing against the

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

cellar. White had lived in his house nearly thirty years, and when he first took up his abode at that place there was a currier's shop over the cellar, but the shop was burned some ten or twelve years before the accident. Before the shop was burned the highway or street was fenced on both sides. White's and the adjoining lot were fenced when he went there, and there was a continuous line of fence for a considerable distance on that side. The proofs showed that the front of the shop on the other side of the street, was on the line of the street, and that there was a fence on each side of the street on the same line. It was conceded that the shop was not rebuilt; and the evidence showed that the back of the cellar-wall, on the line of the street, extended within the line of the street on that side; that the top of the wall was nearly or quite level with the street, and that it was without fence or railing. Repairs had been made on the street, and the travelled way was slightly turnpiked, causing a depression on each side of the travelled part, of seven inches at the greatest depth, and having a space of three feet in width on the outer sides of the gutters, for sidewalks. Except the absence of a fence or railing against the cellar, the street was in good repair, and was safe and convenient as a street of that width. The cellar was four feet deep, and there were large rocks in it, besides those in the walls. When the shop was burned, or shortly after, a fence was erected on the line of the street, against the excavation, but it was soon blown down, and had never been rebuilt at the time of the accident.

The following is a summary of the plaintiff's testimony: Late in the afternoon of July 17, 1861, he went to a stable in Federal street, into which Pearl street runs, and hired a horse and chaise and drove to his own house, where his wife got into the carriage. They drove around the village for about two hours, at the expiration of which he returned to his house, left his wife, and started to return the horse and vehicle to the stable. After returning to his house, and attempting to turn the carriage, after his wife had got out, he found that the street was not wide enough for the purpose, and to obviate the difficulty, he first turned the horse to the left, then "backed" a little way, and then pulled the right-hand rein, and guided the animal around to that side. Having done so, he started to go to the stable, and had proceeded a few rods,—opposite White's house,— when he saw one Henry F. Gordon, on the north side of the street, travelling the same way. Thereupon he stopped, turned the horse to the right, and invited Gordon to ride with him. Gordon went around to the left side of the carriage and got in. After this the plaintiff drew the other rein, to bring the horse back into the road; and the witness said "the horse came back too far, and commenced to back." Perceiving this, he slapped the horse with the reins, to start him forward

and stop him from backing. Gordon jumped out at the same time, and the horse stopped, but the rear wheels of the carriage were then passing over the cellar-wall. The plaintiff also attempted to jump out, but fell over the fender into the cellar, and was instantly followed by the carriage and horse. There was some testimony concerning the character and habits of the horse, and a description of the condition of the plaintiff consequent upon the injury, but sufficient allusion to these points is to be found in the opinion.

Strout & Gage, for plaintiff.

John Rand and George E. B. Jackson, for defendants.

CLIFFORD, Circuit Justice. Towns in this state are required to keep their highways, town ways, and streets in such repair that they shall be safe and convenient for travellers with horses, teams, and carriages. Rev. St. 224. Persons who receive any bodily injury, or suffer any damage in their property, through any defect, or want of repair, or sufficient railing in any highway, town way, causeway, or bridge, may recover for the same of the county, town, or person bound to keep the way in repair, provided that it appear that the county, town, or person, as the case may be, had reasonable notice of the defect, or want of repair, and that the plaintiff at the time he received the injury was in the exercise of ordinary care. Rev. St. 227. Repeated decisions in this state show that the right to recover in such cases depends upon the following conditions, and that they must all concur, before it can be held that the defendants are liable: 1. That the highway was one that the inhabitants of the town were bound to keep in repair. 2. That it was defective, and out of repair at the time of the accident. 3. That the plaintiff was injured as alleged in his declaration. 4. That the town had reasonable notice of the defect. 5. That the plaintiff was in the exercise of ordinary care, when he received the injury. 6. That the injury was occasioned solely through the defect in the highway, and not from any negligence or want of ordinary care on the part of the injured party.

The existence of the highway is not controverted, and it is conceded that the town was bound to keep it in repair. Satisfactory proof of user as such, even for a period of more than twenty years, was introduced by the plaintiff; and he also proved that the proper authorities of the town had made repairs on it within six years before the injury, which of itself estops the town to deny the location. Rev. St. 228. Defendants deny that the highway was defective, and that denial presents the first issue of fact between the parties. Uncontradicted evidence showed that the highway was only two rods wide, but that it was level, and in good repair in all respects, except that it had no

fence or railing at the place where the plaintiff was injured.

Unguarded as the street was at that place by any fence or railing, I am of the opinion that the excavation rendered the street unsafe, inconvenient, and dangerous to travellers. Evidence of the injury to some extent is full and satisfactory, and the fact is not controverted by the defendants. Notice of the defect in the street, if the excavation is found to be one, is also very properly conceded by the defendants, as the evidence is full to the point, and all one way. Means of knowledge upon the subject were open to all the inhabitants, as the defect had existed for more than ten years, and the witness who lived on the opposite side of the street testified that, several years before the plaintiff was injured, he notified one of the selectmen that this was a dangerous place in turning, and that it ought to be fenced.

Suppose these four issues to be found for the plaintiff, still, the defendants deny that he is entitled to recover, because they insist that he was not in the exercise of ordinary care at the time of the accident, and that the injury he received was not occasioned solely through the defect or want of repair in the highway. These two defences may be considered together, as the circumstances relied on in their support are either substantially the same or blended with each other so that they cannot well be separated. Pearl street runs into Federal street, and extends in an easterly direction a considerable distance beyond the dwelling-house occupied by the plaintiff.

(After a review of the details of the accident, THE COURT say:)

Such is the substance of the circumstances attending the accident, as proved by the plaintiff and the person who was with him when it occurred, and it is difficult to see how any one who reads can impute to the plaintiff any want of ordinary care in driving, or in his efforts to avoid the peril. The accident occurred towards eight o'clock in the evening, but it was not dark, and there is nothing in the circumstances attending it to authorize the conclusion that the plaintiff was guilty of any degree of negligence. On the contrary, they warrant the conclusion that the plaintiff, if he had a suitable horse and carriage, was at the time in the exercise of ordinary care, as required by law, to entitle him to recover damages of the defendants for the injuries he received. No objection is made to the sufficiency of the carriage, but it is insisted that the horse was unsuitable, and that the injury was not occasioned solely through the defect or want of repair in the highway. Many witnesses were examined on this point, and there is considerable conflict in the testimony. Where an issue in the case depends upon conflicting testimony, parties must be satisfied with the statement of the conclusions of the court, as it would extend an opinion to an unreasonable length to relate the details of the testimony as given by the several witnesses.

Defendants' witnesses testify that the horse was accustomed to back, and that he was a vicious horse. On the other hand, the plaintiff's witnesses testify that the horse was kind, safe, good driving, and without any such vice as is ascribed to him by the defendants. Nothing appears in the circumstances attending the accident to afford any support to the views of the defendants, except that the horse backed, as he had just been made to do, in front of the house of the plaintiff, in order to enable the plaintiff to turn the carriage in that narrow street. When the rein was drawn by the plaintiff, to bring the horse straight in the road, he came round too far, and backed, but when slapped with the reins he stopped; and it seems highly probable that the accident would not have happened if there had been a fence or railing around the excavation. Most of the defendants' testimony as to the character of the horse refers to his conduct when under harsh training by an owner as a means of augmenting his market value. During the period of those appliances he was known to back, as proved by that owner and other witnesses who saw him driving the horse. But many witnesses called by the plaintiff, who had owned or known and driven the horse, both before and after the period when he was in the possession of that owner, testify that the horse was kind, safe, gentle, and good driving, and that he had no such vice as that charged by the defendants. Considered altogether, the weight of the evidence is greatly on the side of the plaintiff, and it shows to the satisfaction of the court that the injury was occasioned solely through the defect or want of repair in the highway. Plaintiff therefore is entitled to recover for the injury he received; and the only remaining question is, as to the amount of the damages.

The statement of the plaintiff is, that his side struck the rocks when he fell into the cellar, and that the horse, as he fell into the cellar, struck him on his back and jammed him on to the rocks; but he got out of the cellar, and was able, with the assistance of his wife and one other person, to walk to his own house. He complained of injury in his back, right knee, and second finger of his right hand; suffered a good deal of pain; sent for a physician, who ordered that his back should be rubbed with wormwood and spirits; put a plaster on his right side, and something on his knee, which healed up in about a week; confined to his house eight or ten days, and used crutches for some two months; not able to work after he got out; pain in right side, and kneepan troubled him ever since, and always worse when he gets cold. He states that he has not been able to do half a man's work since the injury. His wife was also examined and con-

firmed his statements as to his visible injuries, suffering, and inability to labor. Two physicians were also examined, who expressed strong doubts whether the plaintiff would ever regain his vigor which he had before the injury.

The rule of law is plain that the plaintiff is entitled to a just compensation for his injuries, but the estimation of the amount is a matter attended with great difficulty. Injuries apparently slight may prove to be serious, and those supposed to be serious may prove slight under skilful treatment. Subsequent ill-health and debility may result from such an injury, or they may result from other causes wholly distinct. Mere opinions of physicians, that such complaints are consistent with the theory that the difficulty results from the injury, or is the effect of it, must be received with caution, and weighed in view of all the uncertainties which surround the case.

Impressed with these views, and anxious to administer justice between the parties, the court has attentively examined the whole testimony given to the jury, and the additional testimony introduced to the court. Considering the whole case, in all the circumstances, the court is of the opinion that the plaintiff do recover of the defendants the sum of $900 and costs of suit. The direction of the court is, that judgment be entered for the plaintiff, for $900 and costs.

[The case was subsequently heard upon the plaintiff's appeal from the clerk's taxation of costs. Case No. 10,239.]