FREDERICK WRIGHT vs. INHABITANTS OF TEMPLETON.
EMMA L. WRIGHT vs. SAME.

Worcester.   Oct. 7, 1881. — Jan. 4, 1882.   LORD & ALLEN, JJ., absent.

In an action against a town for injuries occasioned by a defective railing between a highway and a pond, it appeared that the plaintiff, a woman, was driving in the night-time, on the highway, a horse attached to a wagon, when the horse, being frightened by a lantern used by some boys who were fishing, cramped the wheel of the wagon and backed it against the railing.  On the issue whether the plaintiff's loss of control over the horse was momentary merely, it appeared that the place where one of the boys (the only one who was called as a witness) testified that they were fishing, was more than seventy feet from the place where the wagon struck the railing, and the plaintiff, on cross-examination, testified that the horse approached within eight or ten feet of the boys before he stopped.  The plaintiff also testified that everything happened in a momentary length of time, and there was other evidence to this effect.  The place where the boys were fishing was in dispute, and there was evidence that the only marks of wheels, beside the regular ruts, turned sharply from these ruts to the place of the accident, a distance of seven and a half feet.  Held, that the defendant had no ground of exception to the submission to the jury of the question whether the plaintiff's loss of control over the horse was momentary only, with an instruction that, if the horse backed sixty feet or more, the plaintiff could not recover.

At the trial of an action against a town for injuries caused by a defect in a highway while the plaintiff was driving his horse along the same, the defendant asked the judge to rule that, if the horse had a defective vision and this contributed to the accident, the plaintiff could not recover.  The judge instructed the jury that, if the state of the horse's vision was such as to make it liable, when exposed to ordinary objects upon and along the highway by a driver of ordinary care and skill, to become unmanageable through fear, and this condition of the horse's vision contributed to the accident, or if his vision was so defective as to render him unsafe and unsuitable to drive on the highway, the plaintiff could not recover; nor could he, if his negligence or the unsafety of the horse in any way contributed to the injury.  Held, that the defendant had no ground of exception.

TWO ACTIONS OF TORT for injuries to person and property alleged to be caused by a defective railing in a highway in the defendant town.   The cases were tried together in the Superior Court, before *Colburn*, J.   The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions, which appear in the opinion.

*F. P. Goulding*, for the defendant.

*G. A. Torrey*, for the plaintiffs, was not called upon.

DEVENS, J.   The defendant contended that there was no evidence that the female plaintiff, who was driving in company

with another woman, had any control of the horse at the time of the accident, or that such loss of control was momentary only; and therefore asked the court to rule that the defendant was entitled to a verdict. An examination of the evidence shows that this ruling should not have been given.

The horse of the plaintiff, frightened by the lantern of some boys who were fishing, backed and cramped the wheel, bringing it in contact with a defective railing by the side of a pond; the railing gave way, and the vehicle was precipitated into the pond. The only wheel ruts testified to, except the regular ruts of the highway, turned sharply from the ruts and ran directly into the pond. The female plaintiff testified, on cross-examination, that the horse approached within eight or ten feet of the boys before he stopped. The only boy called of those who were fishing testified that the place where they were fishing was more than seventy feet from the place where the wagon struck the railing. This evidence tended to show that the horse must have backed some sixty or seventy feet before he cramped the wheel and turned the vehicle from the road. But the point where the boys were fishing was in dispute, the judgment of the plaintiff as to the nearness which she approached was uncertain, and her testimony was definite that the accident was all in a momentary length of time; and the evidence of two persons who were fishing on the other side of the pond tended to show that it was an instantaneous affair. It was also worthy of consideration whether the horse, alarmed by the shining of the lantern, would have approached within eight or ten feet of it before stopping, or whether he could have backed the vehicle a distance of sixty feet without cramping the wheel. On these facts the judge properly submitted the case to the jury.

The instructions that, in order that the plaintiff should recover, it was necessary that it should appear that the defect in the highway was the sole cause of the accident; and that the plaintiff could not recover if the horse had become uncontrollable before the accident, unless her loss of control was momentary only; and that whether it was so was a matter of sound discretion for the jury in view of all the facts, — were in accordance with well-settled principles of law. *Babson* v. *Rockport*, 101 Mass. 93.

The request of the defendant, that, if the horse backed a distance of twenty or thirty feet where the way was not defective, and then came on the defect, there could be no recovery, was apparently an attempt to make the court definitely settle, as matter of law, the exact distance beyond which the horse could not be out of the control of the driver without depriving the plaintiff of the right to recover. The jury were instructed that such a loss of control as permitted the horse to back sixty feet or more would prevent recovery. This was treated by the judge as an extreme case, and it is by such cases that illustrations can often most conveniently be presented to aid the jury in determining that which is essentially a question of fact. But while extreme cases may be supposed or presented which lie outside the limits of the discretion of a jury, those limits are very broad, and an attempt accurately to define the exact distance beyond which a horse cannot swerve or back without its being also held that he is uncontrollable, could not have been successful. It was a matter properly left to the jury.

It was admitted that the horse was nearly or quite blind of one eye, and there was evidence that the sight of the other eye was impaired. The defendant desired an instruction that, if the horse had a defective vision, and this contributed to the accident, the plaintiff could not recover. The jury had been instructed that, if the state of the horse's vision was such as to make it liable, when exposed to ordinary objects upon and along the highway, to become unmanageable through fear, by a driver of ordinary care and skill, and this condition of the horse's vision contributed to the accident, or that if the vision of the horse was so defective as to render him unsafe and unsuitable to drive on the highway, the plaintiffs could not recover; nor could they if their negligence or the unsafety of the horse in any way contributed to the injury.

These instructions were all that the case required. To adopt a rule like that proposed by the defendant would be to require every one to use on the road a horse that was absolutely perfect, if he would establish any rights against those bound to keep the highways in repair. Many horses that are entirely fit for road service are not thus perfect. If a horse were too slow or too fast, either circumstance might contribute to an accident in cases

which could be readily supposed, while the animal would still be one that could properly be pronounced safe and suitable to be driven. When it is said that the defect in the highway must be the sole cause of the accident, it is intended thereby that it shall be made to appear that no act of negligence on the part of the plaintiff contributed to it. If one drives an unsafe or unsuitable horse, and its characteristics contribute to the accident, the defect in the highway is not the sole cause; it is partly attributable to his own negligence. If, in the present case, it, was shown that the female plaintiff, being possessed of and exercising ordinary skill and care, drove a safe horse suitable for the road, the plaintiffs may recover, even if some imperfection of vision in the horse has contributed to the accident. All the care required of her has been exercised, and the sole responsible cause of the accident is the negligence of the defendant in not making the way safe and convenient for travellers.

In *Murdock* v. *Warwick*, 4 Gray, 178, relied on by the defendant, the jury were instructed that, although the action of the horse driven by the plaintiff, from some vicious habit occasionally operating, contributed to the result, the plaintiff might recover. This clause of the instructions seemed to the court inconsistent with a former clause, by which the jury were instructed that the horse should have been one such as a man might reasonably drive and use on an ordinarily safe highway. In the case before us, the jury were not only instructed that, if the vision of the horse was so defective as to render him unsafe or unsuitable to drive on the highway, the plaintiffs could not recover, but also that they could not recover if their negligence or the unsafety of the horse contributed to the accident; and that the defect in the highway must have been the sole cause of the accident, no other cause contributing thereto.

*Exceptions overruled.*