WARREN W. SPAULDING *vs.* INHABITANTS OF WINSLOW.

Kennebec. Opinion March 12, 1883.

*Ways. Defects. Proximate cause.*

The plaintiff was traveling with his horse and wagon upon a road in the defendant town, when the horse took fright at a hole in a culvert upon the road, and by the action of the horse the wagon was carried into the adjoining ditch, and the plaintiff was thereby injured. By a statutory provision the defective culvert imposed no liability upon the town, not having been in existence for twenty-four hours before the accident happened. The defect complained of in the writ is the want of a railing between the traveled way and the ditch. *Held;*

1. That if the fright of the horse at the hole was the proximate cause of the accident, or one of the proximate causes producing it, the plaintiff cannot recover; but that if a remote cause only, and another defect in the road was the only proximate cause of the accident, he can recover.

2. That if the horse became unmanageable, substantially freeing himself from the control of the driver, and the upset ensued from such unmanageableness, the defective culvert or the horse's fright at the culvert must be considered to have been a proximate cause of the accident or one of the proximate causes producing it.

3. That if the horse merely started or shied a few feet from the line of travel and, through only a momentary loss of control by the driver, threw the wagon into the ditch, the horse would not be considered unmanageable, and, in such case, the defective culvert, or the horse's conduct on account of it, would be only a remote and not a proximate cause of the accident.

4. That upon the question, whether the road was or was not defective for want of a railing at the time of the accident, the hole in the road should not be taken into consideration any more than if it had never existed, it being a temporary want of repair for which the town was not responsible.

ON EXCEPTIONS, and on report on motion to set aside the verdict.

An action to recover damages for personal injuries sustained by reason of a defect in a road in the defendant town. The writ was dated August 16, 1881. Plea, general issue.

The defect complained of was a want of a railing alongside the way, by reason of which the plaintiff's wagon was upset in the ditch, his horse having shied at a hole in a culvert. The accident occurred August 4, 1881.

At the trial the presiding justice instructed the jury as follows :

. . . "It will be incumbent, then, upon the plaintiff, in the first instance, having the burden of proof, to satisfy you that the highway was not safe and convenient at the point where he claims the accident happened ; and that it was not safe and convenient for the reasons and in the particulars named and specified in his notice to the town and in his writ which has been read to you. Secondly, it will be incumbent upon him to satisfy you that an accident happened there by reason of which he sustained an injury, and that at that time there was no want of ordinary care on his part which contributed to produce that injury ; that the wagon in which he was then riding was reasonably and ordinarily safe and strong and suitable to be used in that manner and for that purpose, and that the horse was a reasonably and ordinarily kind, gentle and safe horse, and reasonably and ordinarily well

broken for travel upon the public way.   Or, if the carriage was not of that character, or the horse was not of that character, then that the actual condition of the wagon or the actual character of the horse did not contribute to produce this injury.

"Then it will be incumbent upon him to show you in the third place that the defect in the highway, if there was one, was the sole·cause of the injury to him.·  In·other words, that the accident happened through the defect alone; that no want of care on his part, as I have said, and no independent, efficient cause directly and immediately contributed to produce the injury.   It will then be incumbent upon him to show that the town had actual notice of the condition of the way as it was at the time of the accident; that he, after the accident, gave the notice within fourteen days.   The statute I have read to you.   I will not be more specific upon these points because there is no serious controversy in relation to them.  I will speak of the plaintiff's notice further on.

. . . "Now, you will perceive that the court here [the judge had read from opinion of GRAY, C. J., in *Stone* v. *Hubbardston*, 100 Mass. 49,] have made a distinction which the courts in this state have not thus far made.  That is, that while they uniformly adhere to the general rule, as in this state, that if any independent, efficient cause directly and immediately contributes to produce the injury, the plaintiff cannot recover; yet, you are to consider that in connection with the fact of a cause produced by or through the character of an animal that is reasonably and ordinarily gentle and safe, and reasonably and ordinarily well broken for use upon the public way; so that if the shying is not occasioned by any vicious habit of an animal of that kind, but that the object is of a character to startle and cause any animal of a reasonably and ordinarily well broken character to shy, then it does not preclude the plaintiff from recovering; that the two points are to be considered together; that the jury are not·required to consider a cause which thus operates upon a well' broken animal, an ordinarily safe and gentle animal, as a directly, efficiently and immediately contributing cause.   They are not compelled so to consider it.   I, therefore, for the purposes of

this trial, give you this rule with reference to the temporary covering placed upon the hole near the easterly end of the culvert by one of the selectmen of the town of Winslow a few hours prior to the alleged accident in this case; if you find that the temporary covering placed upon that hole near the easterly end of the culvert was placed there by one of the selectmen of the town of Winslow, acting in the capacity of a highway surveyor in making repairs on the highway, and find that it was not such a condition as would render the way unsafe and inconvenient for travel, regarded as an obstruction, and that the town did not have twenty-four hours' actual notice, as they would not have if it had not existed longer than a few hours, but find, nevertheless, that it was a condition, an object or a material calculated and likely to frighten a horse ordinarily and reasonably safe and gentle and well broken for use upon the public way, and that the plaintiff's horse was a reasonably safe, gentle and well broken horse for travel upon the public way, and that the horse shied by reason of this temporary covering upon the culvert near the easterly end, and not by reason of any vicious habit of shying, and at the moment the carriage went into the ditch on the westerly side of the highway the horse had not passed entirely beyond the control of the driver, so that if there had been no defect in the way he would immediately have recovered control of the horse, then I instruct you that with the other conditions to which your attention has been called or will be called, being fulfilled, the plaintiff may recover in this action for any damages he has sustained by reason of the injury received at that point. But, if, on the other hand, the object was not of a character calculated to frighten a horse of this gentle nature which I have repeatedly named, and you find that the horse shied by reason of his own vicious habits, then you would be authorized to find that that was a directly, and immediately contributing cause which would prevent the right of the plaintiff to recover, providing it did so contribute to produce the injury."

To this instruction the defendants excepted, and also moved to set aside the verdict, which was for the plaintiff in the sum of two hundred and twenty-five dollars.

The opinion states other material facts.

*S. S. Brown*, for the plaintiff, cited : *Macintosh* v. *Bartlett*, 37 Maine, 130 ; *Bacheller* v. *Pinkham*, 68 Maine, 252 ; *Lyman* v. *Amherst*, 107 Mass. 343 ; Hilliard, New Trials, 284 ; 97 Mass. 258 ; 101 Mass. 93 ; 100 Mass. 49 ; 114 Mass. 507 ; 111 Mass. 357 ; 64 Maine, 57 ; 66 Maine, 348 ; 18 Maine, 286.

*L. C. Cornish*, (*Orville D. Baker* with him) for the defendants.

The court erred in the citation and practical adoption of *Stone* v. *Hubbardston*, 100 Mass. 49, for two reasons, because the decisions of Massachusetts in this class of cases differ materially from those in our own state, and because the facts of that case were essentially unlike the case at bar.

In an early Vermont case, *Hunt* v. *Pownal*, 9 Vt. 411, it was decided that when one of the causes of an accident is a defect in the way and the other is one for which neither party is responsible, the town is liable.

Massachusetts adopted this rule. *Palmer* v. *Andover*, 2 Cush. 600 ; *Rowell* v. *Lowell*, 7 Gray, 100 ; *Titus* v. *Northbridge*, 97 Mass. 264.

Maine declared it unsound. *Moore* v. *Abbot*, 32 Maine, 46 ; *Coombs* v. *Topsham*, 38 Maine, 204 ; *Moulton* v. *Sandford*, 51 Maine, 127 ; *Perkins* v. *Fayette*, 68 Maine, 154 ; *Anderson* v. *Bath*, 42 Maine, 346.

And the tendency of our court has been to increase rather than to relax the stringency of this established rule.

Counsel further elaborately argued the case and contended upon the question of liability for injury when a horse becomes unmanageable, that where the unmanageableness is caused by fright at an object which in itself is a defect in the road then the town is or may be liable, but where the horse took fright at something which was not a defect, and the injury happened, then there would be no liability on the part of the town. *Clark* v. *Lebanon*, 63 Maine, 393.

The Massachusetts court recognizes the doctrine in *Cushing* v. *Bedford*, 125 Mass. 526 ; *Palmer* v. *Andover*, 2 Cush. 600 ; *Bemis* v. *Arlington*, 114 Mass. 507, that where the momentary

shying of the horse is a pure accident, for which the plaintiff is not responsible and an injury happens from a defect and this contributory shying of the horse, the town is liable.

But that doctrine was directly repudiated in this state in the case of *Moulton* v. *Sandford, supra.*

PETERS, J.   The plaintiff was traveling with horse and wagon upon a road in the town of Winslow, when his horse took fright at a hole, or at the fresh covering of a hole, in a culvert crossing the road, and by the conduct of the horse the wagon was carried into the ditch, the plaintiff was thrown therefrom, and thereby received a personal injury.   The plaintiff alleges that the road was defective for not having a railing between the traveled way and the ditch adjoining.

A question arises, whether the fright of the horse should be considered the legal cause or any part of the legal cause of the accident.   It is admitted that the hole, or the temporary repairing of the hole, had not existed twenty-four hours before the accident happened.   Inasmuch as the town would not be liable, as the law then stood, for an injury caused by a defect of which the municipal officers of the town had not twenty-four hours' actual notice, it is contended by the defendants that, if the hole in the culvert had any force or influence in causing the injury, the plaintiff cannot recover.   In other words, one of the positions of law relied upon by the defendants is, that the town is to be regarded as being in the same or as good a condition and position as if no hole in the culvert had ever existed.   In still another way the idea may be as well expressed.   The town says, we were not responsible for the hole in the culvert, and, if the hole had not been there, the accident would not and could not have happened.   Therefore, the defect for which we were not responsible, must, *ex necessitate,* be considered to be the legal cause of the accident.

We do not concur with the defendants in this view.   We think the only purpose of the statute was to screen a town, not having the twenty-four hours' notice, from the consequences of a defect, in cases where the defect operates as a proximate cause of an injury.   Our judgment is that the hole in the culvert might be

an object or thing without the existence of which the accident could not have happened, and still be no part of the legal cause of the accident. It might have its remote and indirect influence in the same manner that many other objects and things, which are not defects upon a highway, would have in many cases. The statute declares that, under the circumstances in proof, the hole in the culvert shall not be regarded as a defect. So the law says a bit of white paper shall not be. But the hole or the paper may be the remote, and some real defect be the proximate cause, of an accident.

Suppose, in the case at bar, the horse had not been affrighted, but the driver, using due care, had, under some misjudgment or miscalculation in driving by the hole, or in passing another team at the place of the hole, caused his team to be upset at the side of the road, where there should have been a railing, and such an accident would not have occurred but for the hole in the culvert. We think in that case the hole in the culvert could not be considered as the real and legal cause of the accident. Everything which induces or influences an accident, does not necessarily and legally cause it. In the case supposed, the unrepaired or improperly repaired culvert would have an accidental and casual but not a causal connection with the accident. It might be the "agency," or "medium," or "opportunity," or "occasion," or "situation," or "condition," as it is variously styled, through or by which the accident happened; but no part of its real and controlling cause. It would be the remote, but not the proximate cause. *O'Brien* v. *McGlinchy*, 68 Maine, at p. 557.

Here, then, must be the proper distinction. If the hole or the horse's fright at the hole, was the proximate cause of the injury the plaintiff cannot recover. If it by chance became merely an agency through which another defect operated to produce the injury, then he can recover.

Now, whether the fright of the horse at the hole shall be regarded as the true and real cause of the accident, or only a circumstance which permitted it to happen, must depend upon the extent of the misconduct of the horse. If the horse became by fright unmanageable, substantially freeing himself from the

control of the driver, and the upset ensued from such unmanage-
ableness, then the fright of the horse should be regarded as a
proximate cause, or one of the proximate causes, of the accident.
The legal condition of the case would be essentially or precisely
the same as existed in the cases cited. *Moulton* v. *Sandford*,
51 Maine, 127; *Perkins* v. *Fayette*, 68 Maine, 152. There
were two causes in those cases, to produce the accident, for one
of which the town was not legally responsible. So in the case
at bar, under the conditions assumed, two proximate causes
would exist, or if only one existed, then the fright of the horse
would be the sole cause of the accident.

If, however, the horse, while being properly driven, upon
sight of the hole suddenly started or shied, and swerved or
sheared a few feet from the direct line of travel, and, through only
a momentary loss of control by the driver, threw the wagon into
the ditch on account of the want of a railing, and the road was
defective for want of a railing, in such case the misadventure of
the horse should not be considered as causing the accident.
Every irregularity in the movement of a horse is not imputable
to some fault or vice. Perfection of conduct is not to be expected.
We think it was correctly said by CHAPMAN, J., in *Titus* v.
*Northbridge*, 97 Mass. 266, that "a horse is not to be consid-
ered as uncontrollable that merely shies or starts, or is moment-
arily not controlled by the driver."

It is not a fault in a horse to be spirited, or to start up
quickly, or to shy and shear from objects to a certain extent.
Such things are very common occurrences, and are to be looked
for and expected in the use of horses, and cannot be prevented or
effectually guarded against by the owners or drivers of horses.
It is not unreasonable to drive horses of such description upon
our public roads. Therefore, it would not be reasonable to say
that the fright of the horse, under such circumstances and condi-
tions as we are now assuming, hypothetically, to be true, was a
proximate cause of the plaintiff's injury. There can be no fixed
rule defining proximate cause. Much must depend upon the
circumstances of each particular case. *Page* v. *Bucksport*, 64
Maine, p. 53.

And much depends upon the common sense of the thing. *Willey* v. *Belfast*, 61 Maine, p. 575.

It is not an easy thing to establish a general rule as to what may be considered unmanageableness of horses, and much depends upon the circumstances of each case that arises. The distinctions which we make in this case are well established by the cases in Massachusetts and elsewhere. *Titus* v. *Northbridge, supra*; *Stone* v. *Hubbardston*, 100 Mass. 49; *Cushing* v. *Bedford*, 125 Mass. 526; *Wright* v. *Templeton*, 132 Mass. 49; *Hey* v. *Philadelphia*, 81 Pa. St. 50; *Kennedy* v. *New York*, 73 N. Y. 365; *Nichols* v. *Brunswick*, 3 Cliff. 81; 2 Thomp. on Neg. 1207, and cases in note.

Upon the motion, we are inclined to set the verdict aside. In our judgments, it did not belong to the plaintiff to complain that the way was defective. He knew what the road was. His horse declined to pass over it and stopped. He took the risk of forcing the horse along. To decide whether, as far as concerns the plaintiff, the road was defective or not, we must take it as it would have been without any hole in or repairs upon the culvert, inasmuch as for that temporary condition of the culvert the town was not then responsible. That element in the description of the road must be excluded from the consideration. Probably the jury failed to exclude it in forming their conclusion. The culvert itself is not complained of. The allegation in the writ is, that there was no railing at the side of the road, and not that there was none upon the culvert. The plaintiff testified: "It (wagon) dropped off before it got to the crossway. It was not the want of a railing to the crossway of which I complained. I complain of the want of a railing where I went into the ditch. That was six feet south of the crossway." The culvert was of an ordinary character. The opening of the culvert was only about two feet wide and seven inches in height, covered by a thickness of nineteen inches of earth, plank and ties. The road on both sides of the culvert was a level, smooth country road, twenty-three feet between its ditches. There was nothing to prevent travelers using that width of road. The plaintiff's vehicle required less than six feet of this space. The ditch on the south-

erly side is the only defect complained of. This was but twenty-seven inches deep at the most. The plaintiff contends that there should have been a railing between the ditch and the traveled way. There are many thousands of such places within this state. If railings were required for them, towns would have extraordinary burdens to maintain their roads. The plaintiff had twenty-three feet of width of road for his team about five feet wide, to pass over in the light of day. We feel well assured that some cause other than a defective way, for which the town was answerable, produced the accident.

*Motion sustained.*

APPLETON, C. J., WALTON, DANFORTH and VIRGIN, JJ., concurred.

BARROWS, J., concurred in the result.