JOSIAH O. HINCKLEY vs. INHABITANTS OF SOMERSET.

Bristol.    Oct. 26. — Nov. 23, 1887.    C. ALLEN & KNOWLTON, JJ., absent.

A person, who, while driving along a highway in a town, is injured by reason of his horse taking fright and running against and upon a stone wall two feet in height on the side of the way, may maintain an action against the town, if the injury was received because the wall was not high enough to prevent it, and the want of height rendered it insufficient as a barrier, and the horse was reasonably safe to drive, and the driver was in the exercise of due care and did not lose control of his horse, or lost control for a moment only, and either regained control or would have regained it before the horse ran against the wall, if it had been of sufficient height.

The fact that a stone wall, built by county commissioners on the side of a way in a town, is afterwards rebuilt by the highway surveyor of the town, and remains in the same condition as when rebuilt by him until the happening of an accident by reason of the insufficiency in height of the wall as a barrier, is notice to the town of the existence of the defect.

In an action against a town for personal injuries occasioned by a defect in a way, evidence of conversations between a person who has met with a similar accident at the same place and others not officers of the town, concerning his accident, is not competent to show notice to the town of the existence of the defect.

Exceptions taken at a trial will not be sustained because incompetent evidence has been admitted to prove a fact which the conceded facts necessarily establish, if this court is not satisfied that the excepting party has been prejudiced by the admission of such evidence.

TORT, for personal injuries occasioned to the plaintiff by a defect in a highway in the defendant town. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows :

The notice, duly served on the defendant, stated " that, while travelling on the highway from Somerset to Dighton across the Broad Cove Bridge, so called, on the 29th of May, 1886, between 5 and 6 o'clock P. M., in consequence of the narrowness of the road and the insufficiency of the barrier, and for want of a suitable wall, railing, or fence, when within fifteen feet of the bridge on the Somerset side thereof, and on the easterly side of the highway, my horse and team got partly over the wall, and I was thrown out of my carriage and severely bruised and injured, and my horse and carriage were also hurt and injured."

It was proved, or admitted, that the road in question was laid out by the county commissioners, and that by statutory authority

the commissioners laid out and constructed Broad Cove Bridge and the approaches thereto, and the walls, railings, and barriers. Broad Cove is an inlet of Taunton River, and is tide water. The work was partly in Somerset and partly in Dighton, the middle of the channel, which was the middle of the bridge, being the dividing line. The defendant town was charged with the care and maintenance of the southerly part, which was where the accident happened, and had ever since, down to and including the day of the accident, maintained and kept in repair so much of said road and bridge as were within its limits. There was no question made but that a barrier or wall was necessary to prevent travellers from going off and into the water, which was some ten feet deep, and the surface of which was from eight to ten feet below the level of the top of the wall, and on the east side of the bridge or causeway. The barriers were constructed of stone, and on the east side were from two feet to two feet and three inches in height and twenty inches thick, and solidly built, and at the place of the accident were two feet high. They had been, up to and including the day of the accident, kept and maintained in substantially the same condition as left by the commissioners when they were turned over to the town, except as hereinafter stated. The work was done in 1854. In 1885, the highway surveyor of the town had rebuilt and repaired the same, and raised the east wall some six inches in height.

On the west side of the bridge, and in Broad Cove, persons engaged in oyster fishing anchored their boats, and sometimes tied them to the wall on the west side of the bridge; and this had been done for several years prior to the time of the accident. About four hundred feet to the west of the bridge was a railroad, which crosses the highway to the south of the bridge and between that and the village of Somerset.

The plaintiff introduced evidence, that, on May 29, 1886, between five and six o'clock in the afternoon, he was travelling on said highway, on the Somerset side, and along the causeway leading to the bridge; that his horse was gentle, his rate of speed being then six miles an hour; that he held a taut rein on his horse; that his horse was frightened by the oyster boats on the west side of the bridge, and suddenly shied to the east

side of the way, and ran into and upon the wall or barrier on the east side ; that his horse got up, on to, and astride of the wall with his hind legs, while his fore feet rested inside, on the road ; that the right forward wheel of his open buggy went on to the wall, and over to the east side, and the axle rested on the wall, and the left wheel was in the road on the inside, and the right hind wheel also went up on to the top of the wall ; that he was thrown out, but still held the reins ; that his horse and wagon came back into the road ; and that it was all done and over in an instant. The accident occurred from fifteen to twenty feet from the bridge.

The plaintiff had travelled over the road more or less since April 1, 1885, to and from Somerset and Dighton, and knew of the oyster boats and of the walls of the bridge. The plaintiff contended that the wall was defective, because too low ; and that the accident was due to that defect.

The defendant introduced evidence tending to show that the horse only reared up, and placed his fore feet on the top of the wall.

This was all the evidence in the case as to the place, the time, and the cause of the accident, and as to the laying out, construction, and repair of the bridge, road, causeway, and wall. The jury took a view of the premises.

For the purpose of proving that the town had notice of the defect, the plaintiff called one Dr. Shurtleff, and offered to show by him that he had met with an accident similar to that which befell the plaintiff, and at or near the same place ; but, it appearing that the witness had had no talk with any of the town officers about the accident, he was at that stage of the case asked nothing by the plaintiff in regard to the accident. Subsequently, he was recalled by the plaintiff, and, upon the plaintiff's counsel stating that he expected to show that Dr. Shurtleff had spoken generally of the accident in the village of Somerset, where he lived, and where two of the three selectmen lived, and should contend that it was competent for the jury to find, if such should appear to be the fact, that the selectmen either knew, or by the exercise of reasonable care might have heard, of the accident, the judge ruled that it was competent for the plaintiff to put in evidence of the accident, as bearing on the

question of notice to the authorities of the town, but that the evidence was not to be considered by the jury as tending to show that there was any defect, or that there had been any accident. The plaintiff thereupon put the following question: " Without asking you what the accident was, how generally did you speak of it around the village ?" and he answered, " Very little indeed." The witness further stated, that he had spoken of it but very few times, and to but two or three persons; and the plaintiff put no further questions, and pursued the matter no further.

The defendant called as a witness one Edward Buffington, who testified that he was a deputy sheriff, living about a mile and a half from the village of Somerset, but that he was in the village nearly every day, and his business led him through all parts of the village, and brought him in contact with many different people, and he had never heard the accident to Dr. Shurtleff spoken of.

At the close of the evidence, the defendant asked the judge to rule that, on the evidence, the defendant was not liable, and to direct a verdict for the defendant. The judge refused so to do.

The defendant then asked for the following instructions to the jury: " 1. If the injuries for which the plaintiff seeks to recover were due in whole or in part to the narrowness of the highway, the plaintiff cannot recover. Narrowness of the highway, duly located, is not a defect for which the defendant is liable. 2. If the plaintiff's horse was frightened by an object outside of the limits of the highway, and while so frightened and because of said fright ran into and upon the railing or wall, and the injuries were received of which the plaintiff complains, the plaintiff cannot recover. Such injuries would not be caused solely by a defect in the highway, or want of sufficient railing or barrier. 3. If the plaintiff's horse, wagon, or himself would not have come in contact with the railing or wall, nor the accident have occurred if the team had passed on in the course in which the plaintiff was driving, if the plaintiff's horse had not been frightened, the plaintiff cannot recover. 4. The fact that boats with sails were anchored in Broad Cove, and frightened the plaintiff's horse, would not render the town liable. Broad Cove on the evidence is tide water, over which the town has no control.

5. If the highway and barriers where the plaintiff was injured were in good repair, and in substantially the same condition as constructed and left by the county commissioners when they located the highway and built the barriers or walls, the plaintiff cannot recover.　6. If the plaintiff's horse, by reason of fright, became uncontrollable, so that the plaintiff could not stop him, or direct his course, or exercise control over his movements, and in this condition came upon the barrier or wall which was defective, the plaintiff cannot recover.　7. The defendant was not obliged to maintain a wall or barrier that under any and all circumstances, such as the rearing up of a horse, would prevent injury to those travelling on the highway. If the wall or barrier in question here was suitable for the ordinary purposes of travel upon such a road in a country town, it was sufficient. If the plaintiff's horse reared up and placed his fore feet on the top of the wall, but did not go over, and the injuries complained of were thus received, the plaintiff cannot recover."

The judge gave the first, fourth, and sixth requests, and, on the other questions raised, instructed the jury in substance as follows :

It makes no difference whether the accident was occasioned by the plaintiff's horse being frightened by an object either inside or outside of the limits of the highway.

The narrowness of the road is not in itself anything which constitutes a defect in this case. It is not required of towns that they should fence their highways, or that they should erect railings or barriers to prevent travellers from driving out of the limits of the highway, or to prevent unmanageable horses from escaping from the limits of the highway. The railings or barriers are required only when some steep bank or other dangerous object or place exists so near to the travelled road as to make it dangerous to travel on the road. In this case the evidence tends to show that this highway was located twenty feet wide through water where the tide rose and fell on each side. It is not contended by the defendant but that some kind of a railing or barrier was necessary at this point. The question would be whether the railing or barrier was a suitable one. In deciding that, it is for the plaintiff to prove, by a fair preponderance of the evidence, that it was not a suitable railing or barrier. Whether

or not it was a suitable railing or barrier depends upon whether it was suitable to do that to the ordinary travel which might be expected there, which a railing or barrier is required to do.

Towns are not required to provide barriers to prevent a man from deliberately straying out of the highway, or unmanageable horses from escaping from the highway, nor for persons to sit upon or lean against; neither are they bound to erect and maintain barriers to prevent the getting off from the highway and into dangerous places of extraordinary loads, that is to say, if the strength of a barrier is called in question, if it is sufficient to keep in the highway the ordinary load and team which might be expected along there. If a team of extra weight comes along there and breaks it down, the question would be whether or not it was suitable for the ordinary and usual and expected travel. That would decide the question whether or not it was a suitable barrier. So, in order to determine whether or not there was a suitable barrier, you are to take into account the road as it was, you are to take into account the nature and amount of travel which would reasonably be expected to pass over it, you are to take into account all the circumstances which might reasonably and naturally and ordinarily be expected to attend the travel over and upon that road, and you are to say that the object of the rail is not for people to sit upon or to walk upon, that it is in order to protect them from getting into dangerous places in immediate proximity to the highway by the ordinary things which might be expected to happen upon a highway.

If you find that the railing itself was not such a railing as ought to have been there, then you can find the way defective by reason of its not having been a suitable railing. But it is not decisive of the case if you find that, because, even if there were not a suitable railing in the place, and a railing were required, the fact that there was not a suitable railing is not sufficient to make the town pay damages for an accident that happened at the point where the railing was insufficient, unless you are also satisfied that the presence of a suitable railing would have prevented the injury and the accident. That is to say, you may be entirely satisfied that the railing was not suitable or sufficient, but the accident may be of such a nature that you fail to be satisfied that the presence of a suitable railing would have

prevented the injury; and if it would not have prevented the injury, then you cannot give the plaintiff compensation in such a case for his injury, because, even if the town had discharged its duty, it would not have prevented the injury from occurring. So if you find that there was a want of a suitable railing, the plaintiff must also satisfy you, by a fair preponderance of the evidence, that, if there had been a suitable railing, the accident and injury would not have occurred.

The evidence tended to show that the plaintiff's horse had shied, and had been for some portion of time without his control. The law with reference to that matter is this. If a horse shies, and an accident occurs, if the shying comes because the horse has a vicious habit of shying, then the man would not be in the exercise of due care in driving such a horse; and an accident occurring from the shying of a horse which came in consequence of a vicious habit of the horse would not be an accident for which the plaintiff could recover. But the law presumes that even gentle horses — or rather it recognizes the fact — may sometimes momentarily and occasionally shy and be without the control of the driver. The law with reference to that is to be stated in this way: If from no vicious propensity of the horse, but from some cause which makes an ordinarily gentle and safe horse suddenly start and shy so that he is momentarily without the control of his driver, if the control of the horse would have been immediately regained by the driver if there had been no difficulty or defect in the way, and, while in this condition of want of control, he comes upon a defect, the plaintiff may recover, provided it appears to the jury as a fact, by a fair preponderance of the evidence, that if the defect of a want of a suitable railing, which is claimed as the defect, had not existed, the driver of the horse would have regained the control of the horse before the defect was encountered, that is, before the obstacle that did the damage was encountered, and so the accident would have been prevented. That is to say, applying the illustration, if one's horse sees some object, and for the purpose of this case I will say either within or without the limits of the highway, and it is ordinarily a safe and gentle horse, and it is suddenly frightened by the sight of this object and so shies, and if while in that act of shying, and before anything like a defect

or want of repair in the highway has contributed in any way to what is happening, the driver is thrown out, he cannot recover for any damage he receives in being thrown out, because at that time the horse is beyond his control, although the horse might presently have come under his control again. He would not be prevented from recovery by reason of the fact that momentarily the horse had been out of his control; but for an accident that happens while the horse is out of his control by reason of his shying he cannot recover.

When the horse shies and comes upon something which is claimed to be a defect, and which it is claimed the vehicle would not have come in contact with except for the want of a suitable railing, then the question for the jury is this: Can we say that, if there had been a suitable railing there, the control of the horse would have been regained by his driver, and the accident and injury would not have happened? If the plaintiff makes it appear, by a fair preponderance of all the evidence, that that was the state of things, then he can recover. If he fails to show that, then he cannot recover.

There is, perhaps, in this case a very fine point. It is contended here that, if the wall had been higher, the accident would not have happened. It is conceded upon both sides that a wall or barrier of some kind was necessary. This may be the case, that what is erected as a barrier or wall upon the side or within the limits of a highway by the town may be of such a character or nature as in itself to constitute a defect. But the jury must remember this, that no barrier or railing can be erected which is not an obstacle to the progress of a horse or carriage. Its object is to obstruct and stop the progress of a team beyond its limits. So if a horse suddenly shies, and should by shying throw the team against a barrier, and the obstruction caused by the barrier injured the horse or the wagon, or threw out the man, that would not be a cause of action against the town, because it would be the natural and expected result of the very operation of the barrier as a barrier. But on the other hand, if this barrier was so constructed as in itself to be a dangerous object in the highway, and a defect in the highway, the fact that it was intended also as a barrier would not necessarily prevent the plaintiff from recovering upon the ground that it was,

although a barrier itself, a defect or an obstacle in the highway. In other words, the fact that a certain structure by the side of the highway or in the highway was erected or maintained by the authority of the town, with the intention of having it as a railing or barrier, — a railing or barrier of some kind being necessary at that place, — would not necessarily protect the town from damage for everything that could happen by the existence of that thing there. The fact that it was intended as a barrier would not make it, so to speak, protected. But there would be the question whether or not it was of such a shape and character that it was a defect in the highway.

Then you come to the question whether or not a railing which is too low may also constitute a defect, and for that reason the town or city be liable under some circumstances. The claim here is made that the wall, being about two feet in height, ought to have been higher, and, if it had been higher, the accident would not have happened. With reference to that, all I can say to you is this: if you shall find that the wall as it was there was not a suitable railing or barrier, taking into account the whole location of the place, and the kind and amount of travel, and all those things, and if you shall find that a higher wall would have prevented the accident and injury to the plaintiff, would have enabled the plaintiff to recover the control of his horse, and would have prevented any accident happening, then you may find for the plaintiff, if you believe that that want of height in the railing was the sole cause of the injury.

It is not claimed here that the barrier was of any improper material, or that its perpendicular surface next to the road constituted any defect. For any injury which was occasioned by the striking of the wagon or of the horse against the perpendicular side of the wall, you cannot allow damages. If the plaintiff had been thrown out from his carriage by the striking of the wagon or of the horse against the perpendicular side of the wall, the horse shying at the time, for that injury the plaintiff could not recover. But if solely because this wall was too low, and you believe that the injury occurred by reason of the horse and wagon getting on top of the wall, and, if the wall had been sufficiently high for the purpose of ordinary travel there, the horse and wagon would not have got upon the wall, but the control of

the horse would have been regained, and the accident averted, then for the consequences of the accident the plaintiff might recover, so far as they came from the horse or wagon getting on the wall because too low. That, as it seems to me, is as far as the law would allow the plaintiff to go, and for the purposes of the case I instruct you that that is the law to govern the case.

There is certain evidence in the case that was introduced solely on the question of notice, which you must not consider in any other view of the case. That is, there has been some intimation in the case that some difficulty may have occurred upon this bridge or causeway before. It would not be competent for a plaintiff to show that other accidents had happened at the same place in order to show that the way was defective. If there is before you any evidence tending to show anything of that kind, it is not to be considered by you upon the question as to whether there was any defect in the way or not. It simply bears on the question of notice. It only bears upon that in this way. It is competent for witnesses to say, that upon such and such a time they gave such and such information to the authorities of the town. The question of notice is to be tried upon what were the circumstances of any alleged notice.

There was testimony in the case, other than that of Dr. Shurtleff, to which the last instruction would apply.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*H. K. Braley*, for the defendant.

*A. J. Jennings*, (*J. M. Morton* with him,) for the plaintiff.

FIELD, J. This is an action to recover damages for an injury received through want of a sufficient railing in or upon a highway, on the ground that the defect might have been remedied, or the injury prevented, by reasonable care and diligence on the part of the town. The damages are recoverable from the town by law obliged to repair the way, if it "had reasonable notice of the defect, or might have had notice thereof by the exercise of proper care and diligence" on its part. Pub. Sts. *c.* 52, § 18.

It was contended that the railing was insufficient because it was not of proper height. The second and third requests for instructions ought not to have been granted if the railing was insufficient, and the plaintiff did not lose control of the horse,

and if the injury would not have been received if the railing had been sufficient. The instructions given relating to the fact that the horse became frightened, and the effect of this upon the plaintiff's right of action, were correct. *Stone* v. *Hubbardston*, 100 Mass. 49, 55. *Babson* v. *Rockport*, 101 Mass. 93. *Britton* v. *Cummington*, 107 Mass. 347. *Wright* v. *Templeton*, 132 Mass. 49.

The fifth request ought not to have been granted. It was the duty of the town to keep the way "reasonably safe and convenient for travellers;" Pub. Sts. *c.* 52, § 1; and to put up a sufficient railing or barrier, if the barrier constructed by the commissioners was not sufficient, and if a railing or barrier was required to make the way reasonably safe.

The seventh request ought not to have been granted, because, if the wall was insufficient, and the way not reasonably safe, it was not necessary that the horse "should go over the wall" in order to enable the plaintiff to recover. If the injury was received because the wall was not high enough, and the want of height made it insufficient as a railing or barrier, the plaintiff could recover, if the horse was a reasonably safe horse to drive, and if the plaintiff was in the exercise of due care and did not lose control of the horse, or lost control for a moment only, and either regained the control or would have regained it before the horse would have run against the wall, if it had been of sufficient height.

If the injury would not have been received if the wall had been of sufficient height, and this want of height rendered the way unsafe, then the insufficient wall was the immediate cause of the injury. We do not know that the plaintiff's horse would have run against the wall if it had been of sufficient height, and this defect in the height of the wall may have been the sole cause of the injury. We think that there was evidence for the jury of all the facts necessary to be proved, and that the court rightly refused to direct a verdict for the defendant.

It appears that certain evidence was introduced "solely on the question of notice," which means notice to the town of the height of the wall and of the condition of the way. If the wall was insufficient and the way unsafe, it is immaterial what the authorities of the town thought about it, if they knew the facts.

Notice of a defect is notice of that condition of things which constitutes a defect, although the authorities of the town may think that it does not constitute a defect. This wall was a permanent structure, built in 1854, and was rebuilt and raised about six inches in height in 1885 by the highway surveyor of the defendant town. The plaintiff was injured on May 29, 1886. If the wall was insufficient as a railing or barrier, we have no doubt that, on the undisputed facts, it must be held, as matter of law, that the town either " had reasonable notice of the defect, or might have had notice thereof by the exercise of proper care and diligence " on its part. The wall was a structure which was visible and conspicuous, and had existed for so long a time that the town ought to have known its condition and height, and ought to have known that it was insufficient, if in fact it was insufficient. Besides, the fact that the wall had been rebuilt in 1885 by the highway surveyor of the town, and remained in the same condition as when rebuilt by him, was equivalent to notice to the town of its condition and height. " There is no occasion to prove actual notice to a city or town of its own acts, or of acts which are constructively its own." *Monies* v. *Lynn*, 119 Mass. 273, 275. *Brooks* v. *Somerville*, 106 Mass. 271.

In *Donaldson* v. *Boston*, 16 Gray, 508, 511, it was said: " Mere proof of notice to one or more of the inhabitants does not establish the requisite notice, because it is not their duty to repair the defect or remove the obstruction. The facts must be such as to lead to the inference that the proper officers of the town, whose duty it is to attend to municipal affairs, did actually know of the existence of the defect, or with proper vigilance and care might have known it. Such knowledge may be inferred from the length of time during which the defect has existed, from the central position and publicity of the place where it exists, and any other circumstances which tend to show its notoriety." This is the rule of law under existing statutes. *Hanscom* v. *Boston*, 141 Mass. 242.

The evidence of Dr. Shurtleff was admitted, not " as tending to show that there was any defect, or that there had been any accident," but " as bearing on the question of notice to the authorities of the town," and it appears that there was other testimony of the same kind. The presiding justice carefully limited

the relevancy of this evidence to " the question of notice." We think that conversations about an accident or a defect in a way, between persons no one of whom is an officer of the town, is not competent evidence to show notice to the town, although the conversations may have been had between many different persons. It cannot be inferred that the conversations were heard by other persons than those shown to have heard them. Whether a public notice of a defect in a highway by advertisement in a newspaper or in some other public manner, would be evidence to the town, need not be decided. The evidence, therefore, was inadmissible for the purpose for which it was received, and it is clear that it was not admissible for any other purpose.

But the evidence was admitted to prove a fact which it was unnecessary to prove, if the other facts we have referred to had been proved or admitted, and the exceptions so recite. Exceptions will not generally be sustained because incompetent evidence has been received to prove a fact which the conceded facts necessarily establish. The real complaint is, that the evidence tended to prejudice the defendant with the jury, because, however careful the instructions of the court may have been, the jury would be likely to consider the evidence of a previous accident as evidence that the defendant was in fault, and ought to have repaired the way. There is some force in this, and it would undoubtedly be within the power of the court to sustain these exceptions on this ground, if satisfied that injustice had been done; but we are not satisfied that injustice has been done.                    *Exceptions overruled.*