### TEXAS & P. RY. CO. v. CALLENDAR et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

#### No. 87.

CARRIERS—CONSTRUCTION OF BILL OF LADING.

> A provision of a bill of lading that "cotton is excepted from any clause herein on the subject of fire, and the carrier shall be liable as at common law for loss or damage of cotton by fire," affects not only such other provisions of the contract as relate to the subject of fire, but the latter clause applies to all other provisions which modify the common-law liability of the carrier,—such as that it shall not be liable for loss or damage to the property after it is ready for delivery to another carrier or the consignee, or shall only be liable under certain circumstances as warehouseman; and where the subject of the shipment is cotton, and it is destroyed by fire, the liability of the carrier is in all respects governed by the common law.

In Error to the Circuit Court of the United States for the Southern District of New York.

Rush Taggart, for plaintiff in error.

Treadwell Cleveland, for defendants in error.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The defendants in error, who were the plaintiffs in the circuit court, and are hereafter called the "plain-tiffs," who are partners doing business in Liverpool, and are aliens, delivered, in October, 1894, to the plaintiff in error, hereinafter called the "defendant," a railroad corporation organized under an act of congress, and a common carrier of merchandise from sundry places in Texas to the port of New Orleans, 207 bales of cotton, to be carried to New Orleans by the defendant, and thence to Liverpool by the Elder, Dempster & Co.'s line and the Harrison line of steamships. All the cotton arrived at West Wego between October 17 and October 29, 1894, and was unloaded between the 17th and the 30th days of the same month. Notification by "transfer sheets" of the arrival and unloading of the cotton was sent to the steamship companies for most of the cotton as early as November 2d, and for a few of the bales as late as November 10th, and by the return of the transfers was acknowledged by one of the companies. One hundred and eighty-seven bales of the plaintiffs' cotton were burned in a fire which broke out on the wharf on the evening of November 12th, and to recover damages for the loss this suit was brought. The relation of West Wego to the port of New Orleans, the ownership and manner of use of the defendant's wharf and terminals at West Wego, and the course of business between the defendant and the steamship lines in regard to cotton for export, were fully stated in the opinion of this court in Texas & P. Ry. Co. v. Clayton, 28 C. C. A. 142, 84 Fed. 305, affirmed in 173 U. S. 348, 19 Sup. Ct. 421, 43 L. Ed. 725, and in Reiss and others against the same company (98 Fed. 533), which has recently been decided in this court, and need not be restated here.

The clauses in the bill of lading which bear upon the question in this case are as follows:

"(1) No carrier or party in possession of all or any of the property herein described shall be liable * * * for loss or damage to property of any kind at any place occurring by fire, or from any cause except the negligence of the carrier."

"(3) No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee.

"(4) Cotton is excepted from any clause herein on the subject of fire, and the carrier shall be liable as at common law for loss or damage of cotton by fire. No carrier shall be liable for differences in weights, or for shrinkage of any grain or seed carried in bulk."

"(11) No carrier shall be liable for delay, nor in any other respect than as warehouseman, while the said property awaits further conveyance, and, in case the whole or any part of the property specified herein be prevented by any cause from going from said port in the first steamer of the ocean line above stated leaving after the arrival of such property at said port, the carrier hereunder then in possession is at liberty to forward said property by succeeding steamer of said line, or, if deemed necessary, by any other steamer.

"(12) This contract is executed and accomplished, and all liability hereunder terminates, on the delivery of the said property to the steamship, her master, agent, or servants, or to the steamship company, or on the steamship pier at the said port; and the inland freight charges shall be a first lien, due and payable by the steamship company."

The circuit judge, being of opinion that the exception in clause 4 in regard to cotton controlled the provisions not only of clause 1,

but controlled also that portion of clause 3 and of clause 11 which altered the obligations of a common carrier as established by the common law, directed a verdict in favor of the plaintiffs, and denied the request of the defendant to go to the jury upon the whole case, or upon the question of delivery. To review the judgment upon the verdict, this writ of error was taken.

The principal question in the case is upon the proper construction of the sentence in clause 4 in relation to the liability of the defendant for loss of cotton by fire. The bill of lading was prepared for a contract in regard to property of any kind, and in clause 1 the carrier was exempted from liability from loss by fire except through his negligence. The part of the sentence in clause 4, "cotton is excepted from any clause herein on the subject of fire," probably refers only to clauses wherein fire is mentioned; but the concluding part of the sentence, "and the carrier shall be liable as at common law for loss or damage of cotton by fire," has a wider sweep, and means that the carrier, notwithstanding limitations of its common-law liability which are provided in the bill of lading, retains such liability in regard to damage to cotton by fire. The clause, as a whole, intended to leave and did leave unaltered the implied liability of the carrier for loss to cotton by fire. The limitations which the parties did permit were contained in clauses 3 and 11, which said that the carrier should not be liable for damage after a readiness to deliver, or otherwise than as a warehouseman after the property awaited further conveyance. Whatever may be the extent of these limitations, they were, to a certain degree, modifications of the common-law liability of the first carrier, but its liability at common law for loss to cotton by fire remained intact. The request of the defendant to go to the jury upon the question of delivery of the cotton was properly refused. There was no evidence of a delivery. The cotton was never in the actual or constructive possession of either of the steamship companies, and neither was ready to take it from the defendant's possession, and therefore clause 12 has no bearing upon the question of the defendant's liability. The judgment of the circuit court is affirmed, with costs.