MARANDE et al. v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Second Circuit. May 24, 1900.)

No. 149.

1. CARRIERS—BILL OF LADING—CONSTRUCTION—PLACE OF DELIVERY.

Defendant undertook to transport plaintiffs' cotton from a point in Texas to the port of New Orleans, and deliver it there to a steamship company for transportation to Europe. By the terms of the bill of lading defendant was not to be liable for any loss by fire, nor in any other respect than as a warehouseman, while the cotton was awaiting further conveyance by steamship carrier. The cotton was destroyed by fire while in defendant's cars at West Wego, the terminus of a branch of its railway line on the west bank of the Mississippi opposite the city of New Orleans, where defendant had a wharf, and where it usually delivered cotton for export to the steamship carrier. Held, that West Wego being the point where the steamship companies rightfully expected to receive

cotton from Texas for transportation to Europe, defendant was not liable for the value of the cotton, notwithstanding the exemption in the bill of lading, because of the deviation from the point of delivery named in the bill.

2. SAME—NEGLIGENCE—EVIDENCE.

Evidence that there were evil-disposed persons in the vicinity of the defendant's wharf, who might have set fire to the cotton, and that the defendant, by keeping a larger force of watchmen in attendance, might have more efficiently protected the property from risk, does not establish a cause of action for a negligent loss of the cotton, in the absence of any evidence tending to prove that the fire actually was the work of an incendiary.

3. SAME.

That one of defendant's locomotive engines was allowed to stand near the cotton is not evidence that the fire was negligently set thereby, where it is not shown that the locomotive emitted any sparks or dropped any coals, and the fire occurred seven or eight hours after the locomotive had been taken away, and originated in a part of the cotton not stored in the vicinity of the locomotive.

4. SAME—DILIGENCE IN EXTINGUISHING FIRE.

Where a fire broke out among cotton stored on defendant's wharf, and could have been extinguished before it spread to the cars containing plaintiffs' cotton, if defendant's watchman, in his excitement, had not failed to fully uncoil the hose before turning on the hydrant, such facts were not sufficient to show that defendant was negligent in not providing proper appliances and in exercising reasonable diligence for the extinguishment of the fire.

5. SAME.

Evidence that West Wego was not, in commercial and business understanding, a part of the port of New Orleans during the year previous to the shipment by plaintiffs, and before it was claimed to be such by defendant, was irrelevant.

In Error to the Circuit Court of the United States for the Southern District of New York.

Treadwell Cleveland, for plaintiffs in error.
Rush Taggart, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The plaintiffs brought this action to recover the value of 65 bales of cotton, their property, which was destroyed by fire while in the cars of the defendant, a railway carrier, which, pursuant to the terms of a bill of lading, had undertaken to transport the cotton from Greenville, Tex., to the port of New Orleans, and deliver it there to a steamship carrier for transportation to Havre. By the bill of lading the defendant was not to be liable for any loss by fire, nor in any other respect than as a warehouseman, while the property was awaiting further conveyance by steamship carrier. The cotton had arrived at West Wego, the terminus of a branch of the defendant's line of railway on the west bank of the Mississippi river opposite the city of New Orleans, where the defendant had a wharf, and customarily delivered cotton for export to the steamship carrier, but had not been unladen, owing to the accumulation of cotton upon the wharf when the fire occurred. There were two covered sheds upon the wharf distant from one another about 100 feet, each shed being about 250 to 300 feet long and of about the

same width, and these sheds and a considerable part of the intervening space were filled with cotton in bales. The fire occurred November 12, 1894, about 6:30 p. m. It originated near the center of shed No. 2, and was discovered immediately, but spread so rapidly that all efforts to extinguish it were unavailing; and not only the cotton upon the wharf, but also that in the cars in the vicinity of the wharf, was consumed.

Upon the trial the plaintiffs sought to recover upon the theory that West Wego was not a part of the port of New Orleans, and, because of a deviation by the carrier in taking the cotton there, contended that the exemptions of liability contained in the bill of lading did not relieve the defendant. The plaintiffs also sought to recover upon the theory that their loss was caused by the negligence of the defendant; and offered evidence in support of two issues: (1) That the cotton was exposed to danger of fire from incendiaries, and from a locomotive which during the forenoon had been on the tracks of the wharf; and (2) that the fire could have been extinguished before their cotton was burned if the defendant had provided proper appliances and exercised reasonable diligence. The trial judge directed a verdict for the defendant, and refused to submit the question of the negligence of the defendant to the jury. Error is assigned of this ruling.

We had occasion to consider the first ground of recovery in Reiss v. Railway Co. (C. C. A.) 98 Fed. 533,—an action similar to this, and growing out of the same fire,—and, for the reasons stated in the opinion in that case, do not regard it as tenable. The supplementary evidence does not change the facts or distinguish them in any material particular from those in the Reiss Case.

As to the second ground of recovery, the case as to the first issue hardly merits discussion. That there were evil-disposed persons in the vicinity who might have set fire to the cotton, and that the defendant, by keeping a larger force of watchmen at its wharf, might have more efficiently protected its property from risk, are facts that may be assumed to be proved by the evidence. But these facts did not prove, or tend to prove, that the fire actually was the work of an incendiary, and there was not a scintilla of evidence to prove this. On the other hand, the place where it was shown the fire started raised a persuasive inference against the theory of an incendiary origin, because it started at the most unlikely and dangerous place for the operations of an incendiary. There was not a particle of evidence to connect the locomotive with the fire. If the fire had started in the cotton which was stored in the vicinity of the locomotive, there would have been one fact of value; but it did not. It does not appear that the locomotive emitted any sparks or dropped any coals; no fact was elicited to prove that the locomotive engendered risk beyond its mere presence; and seven or eight hours had elapsed after the locomotive was taken away. The case for the plaintiffs as to the negligent origin of the fire rested wholly upon conjecture and speculation. The evidence upon the second issue, introduced for the purpose of showing that the fire should have been extinguished earlier, merely tended to prove that it could, and probably would, have been extin-

guished earlier if an employé of the defendant had not, in a moment of excitement and peril, failed to exercise the good judgment of a deliberate occasion. The fire started, as has been said, near the center of the building, and close by one of the three or four gangways running across the building, left for access to the bales. There was a hydrant with hose attached close at hand, the hose being coiled about a post. The watchman who discovered the fire immediately ran to the hydrant, turned on the water, uncoiled part of the hose, clambered up on top of the bales, carrying the end of the hose, and directed the hose upon the fire, but the water would not run from the nozzle. Supposing he had not opened the valve, he called to another watchman, who in the meantime had come to his assistance, to open the valve; and the latter, finding it had been opened, tried to aid the first watchman in straightening out the hose. Before this could be accomplished, and in the space of a few seconds, the fire had spread so rapidly that it was beyond control. The evidence indicates that the hose had become kinked while the watchman was carrying it to the place of the fire, and that the water in it made it so heavy and cumbrous that it could not be straightened out in the few seconds available, so as to permit the water to escape. This probably would not have happened if the requisite length of hose to reach the fire had been unwound from the post and straightened out before the water was turned on. This, however, would have involved delay, and seconds were precious. There was a chance that what did happen would happen, but we do not think a jury would have been justified in finding that the watchman was in fault for not anticipating and providing against the contingency. He was laboring under the excitement of imminent peril, and did what any ordinarily prudent man trying to save his own property from destruction would have been likely to do under the same circumstances. The law does not exact the same measure of prudent judgment from those who have to act in the sudden emergency of a great peril as upon ordinary occasions. In Thurber v. Railroad Co., 60 N. Y. 336, the court declared it to be "the well-established rule that persons in sudden emergencies, and called to act under peculiar circumstances, are not held to the exercise of the same degree of caution as in other cases," and this statement of the law is quoted with approval in Railroad Co. v. McDonald, 152 U. S. 281, 14 Sup. Ct. 626, 38 L. Ed. 442. See, also, Wynn v. Railroad Co., 133 N. Y. 575, 30 N. E. 721; Bittner v. Railway Co., 153 N. Y. 76, 46 N. E. 1044; Stabenau v. Railroad Co., 155 N. Y. 511, 50 N. E. 277.

Error is assigned of the exclusion by the trial judge of evidence offered by the plaintiffs for the purpose of showing that in 1893 West Wego was not, in commercial and business understanding, a part of the port of New Orleans. The issue upon this branch of the case related wholly to the situation after the erection of the wharves at West Wego, and it was not claimed by the defendant that as early as 1893 West Wego had been regarded as a part of the commercial port. The evidence offered would not have thrown any light upon the issue involved, and we think it was properly excluded.

We find no error in the record, and the judgment is affirmed, with costs.