### TEXAS & P. RY. CO. v. COUTOURIE.

(Circuit Court of Appeals, Second Circuit. December 20, 1904.)

No. 104.

1. EVIDENCE—RELEVANCY ON ISSUE OF NEGLIGENCE—HABITUAL INTOXICATION.
   Where the destruction of a large quantity of cotton by fire while it was piled in and around sheds on a dock was charged to have been due to a course of negligent conduct on the part of the agents and servants of defendant, which was in possession of the cotton as carrier, in so piling the cotton as to subject it to unnecessary danger, and as to render it difficult to discover a fire, if one should start, in time to stop it; in allowing cotton to be piled over the fire apparatus provided, so that it could not be used; and in failing to provide sufficient or competent watchmen —it was competent for plaintiff to show that defendant's superintendent in charge of the dock, whose duty it was to attend to such matters, habitually became intoxicated and neglected his duties during the time the cotton was being placed on the dock.

2. WITNESSES—EXAMINATION—RESPONSIVENESS OF ANSWER.
   To a question whether the gangways left between piles of baled cotton were straight, "or how were they?" an answer which, after stating that they were usually straight, added that "sometimes the cotton might happen to fall off and block them a little," was responsive; the immediate question to which the examination was directed being as to whether the gangways were so left as to enable watchmen to readily discover a fire, should one start in the cotton.

3. DEPOSITIONS—SUFFICIENCY OF OBJECTIONS.
   A general objection to a question asked a witness on the taking of his deposition, as immaterial and irrelevant, without stating any specific ground, was properly overruled.

4. ERROR—REVIEW—ADMISSION OF EVIDENCE.
   Error cannot be assigned in the appellate court to the admission in evidence of letters, a portion of which was relevant, on the ground that other parts were not, where no motion was made to strike out the irrelevant parts.

5. EVIDENCE—RELEVANCY.
   Upon the issue as to the negligence of a railroad company in failing to employ a sufficient number of watchmen to guard a large quantity of cotton piled upon its wharf against fire, evidence as to the existence at the time of labor disturbances relating to men employed on ships loading at such wharf was competent.

135 F.—30

**6. NEGLIGENCE—INSTRUCTIONS—PROXIMATE CAUSE.**

In an action to recover damages for loss of property by fire, while in defendant's possession as carrier, through the alleged negligence of defendant in failing to take proper measures for its protection, the failure of the court to specifically define in its instructions the distinction between proximate and remote causes was not reversible error, where the jury were told that, to authorize a recovery, the defendant must not only have been negligent, but its negligence must have been the "direct cause" of the loss.

**7. TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTS.**

Instructions requested, although technically correct, are properly refused where the court, in its general charge, has covered the ground in different language.

**8. SAME.**

Instructions requested in an action for negligence considered, and *held* properly refused, as either covered by the general charge, or as omitting pertinent facts shown by the evidence.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here by writ of error from a judgment of the United States Circuit Court for the Southern District of New York, entered upon a verdict of a jury, for the sum of $5,047.74, in favor of the plaintiff below.

Rush Taggart, for plaintiff in error.
Treadwell Cleveland, for defendant in error.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. This action is one of a series of cases arising out of a fire which occurred at Westwego, La., a point on the Mississippi river opposite the city of New Orleans, on November 12, 1894, and which destroyed a large amount of cotton there stored on defendant's wharf and in its cars. The defendant had undertaken to transport this cotton from points in Texas to Havre, France. By its bill of lading it was exempted from liability for destruction by fire.

Former decisions discussing the situation and covering various questions raised as to the liability of the defendant are reported as follows: Texas & Pacific Railway Company v. Clayton, 84 Fed. 305, 28 C. C. A. 142; Id., 173 U. S. 348, 19 Sup. Ct. 421, 43 L. Ed. 725; Reiss v. Texas & Pacific Railway Company, 98 Fed. 533, 39 C. C. A. 149; Texas & P. R. Co. v. Reiss, 99 Fed. 1006, 39 C. C. A. 680; Id., 183 U. S. 621, 22 Sup. Ct. 253, 46 L. Ed. 358; Texas & Pacific Railway Company v. Callendar, 98 Fed. 538, 39 C. C. A. 154; Id., 183 U. S. 632, 22 Sup. Ct. 257, 46 L. Ed. 362; Marande v. Texas & Pacific Railway Company, 102 Fed. 246, 42 C. C. A. 317; Id., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487; Id., 124 Fed. 42, 59 C. C. A. 562.

The bill of exceptions challenges certain rulings, charges and refusals to charge, and specific portions of the charge of the court below.

For the purpose of a satisfactory understanding of the situation, it is necessary to first discuss the arrangement of the wharf and buildings at Westwego, the course of business there, and the condition of affairs at and prior to the time of the fire. The wharf extended along the bank of the river. On it were located two covered freight sheds, open

at the ends and sides, each about 150 by 260 feet in size, known respectively as Nos. 1 and 2, and separated from each other by an open space, not planked, about 50 feet wide. There was one track in front of these sheds on the river side, and two tracks in the rear, situated at a distance from the sheds of 15 feet in front and 10 feet in the rear, and prior to November 12, 1894, a great quantity of cotton had been accumulating for some weeks at the wharf and in cars in the rear of the sheds. On the 12th of November both sheds and a considerable part of the intervening space were filled with bales of cotton. There was evidence tending to show that there were over 20,000 bales of cotton at the wharf; that the bales were piled up as high as possible in the sheds; that the platform was crowded; that cotton was stowed beyond the sheds toward the river, close to the railroad track, and was unprotected by any covering; that the sheds were blocked; and that, while there were gangways across the sheds, there were no gangways lengthwise of the sheds and parallel with the river. There was also evidence to the effect that the only appliances provided for use in case of fire consisted of a tank connected with hydrants, three in each shed having a coil of hose, and a row of barrels with buckets, and some fire buckets, and that no instructions had been given to the men in charge of the dock as to their use, and no fire drill had ever taken place, and that on the night of the fire the hydrant nearest to the place where the fire broke out was blocked with cotton. Although the defendant had been notified of a fire smouldering in some bales of cotton a short time before, and of the increased danger of fire owing to labor troubles, and of the great accumulation of cotton at this point, it had reduced the number of its watchmen in charge so that on the night in question there were but four men in charge of this whole property. The head watchman had had no instructions or experience in the use of fire apparatus, and was confessedly incompetent for the duties of his position.

Upon the trial of a former case, Marande against this defendant (184 U. S. 192, 22 Sup. Ct. 340, 46 L. Ed. 487), the Supreme Court reversed the decision of this court, which had affirmed the action of the court below in directing a verdict for the defendant and refusing to permit the plaintiff to go to the jury on the question of the negligence of the defendant. The grounds on which the Supreme Court rested its opinion were as follows: (1) That the manner in which the cotton was stored, in connection with the operation of the locomotives in the immediate neighborhood of the cotton, which was unprotected by any covering, afforded sufficient proof to go to the jury that it was such as to prevent prompt detection of a fire in season to prevent conflagration. The Supreme Court took the view that, in view of the evidence, a fire might have smouldered for a considerable period prior to its breaking out into flames; that the jury would have been justified in drawing the inference that the sparks from the locomotives falling upon the unprotected cotton might have caused it to ignite; and that the manner in which the cotton was stored, without having gangways extending lengthwise through it, so that the presence of fire might be promptly detected, would afford ground for the jury to find that such negligent storage prevented the seasonable discovery of the fire, because of the absence of such gangways, through which it might have been properly

inspected. (2) That the evidence as to the presence of three watchmen only to care for such a vast accumulation of cotton was sufficient to go to the jury on the question whether, if an adequate force of watchmen had been on hand, the fire might have been detected in time to save the cotton from destruction. (3) That the evidence that cotton was piled up around the posts where the hydrants were situated, and above the coil of hose, so that neither was visible nor accessible from the gangway, and that no systematic inspection of the fire apparatus and no rules for its use had ever been promulgated, furnished reasonable grounds from which the jury would be entitled to infer negligence, creating such a condition as to conduce to error of judgment, for which the defendant should be held responsible.

The first assignments of error argued relate to the admission of evidence as to the intemperate habits of one Wilkinson, who was the superintendent in charge of defendant's wharf at Westwego. It was his business to inspect the hydrants and hose daily, and to keep the gangways clear. One of his clerks testified as follows:

"Q. Did you notice how Wilkinson attended to his duties? A. Well, he was all right in the first part of the day, but in the latter part he was not so good. Used to booze a little too much. Q. Where did he booze? A. Well, that I could not say. He used to go off. Of course, I was attending to my duties. * * * Q. How early in the day did Wilkinson begin to booze, on the average? A. Well, about 11 o'clock he was pretty well loaded. Q. You mean by that he drank heavily? A. Yes, sir. * * * Q. After 11 o'clock in the day, when you say he was pretty well loaded, did you see him about there attending to his duties? A. He would walk around sometimes, making a little fuss. That is about all."

Another clerk testified as follows:

"Q. Do you know what Mr. Wilkinson's habits were as to drinking? A. Yes; I have seen him under the influence of liquor many times during the day."

Other testimony to the same effect was admitted, to all of which defendant duly excepted.

It is unnecessary to discuss the general rule of law as stated by counsel for defendant, "that evidence of past habits or occurrences is inadmissible to prove negligence on the part of the defendant." We are not here concerned with the class of cases where injury has resulted from a single specific act of negligence of a servant on a specified occasion, and where the sole question is as to the conduct of the servant on such occasion. Here the negligence complained of in this particular consisted, inter alia, not in a specific act or neglect, but in a course of business; not in anything done or left undone at the moment when the fire was discovered, but in a situation, claimed to have been produced by continuous negligent acts and omissions, involving a combination of blocked alleyways, hydrants obstructed by bales of cotton, unconnected hose, lack of proper supervision, incompetent servants, etc. The evidence as to Wilkinson's previous habits and condition does not relate to the question as to whether he was drunk when the fire broke out, but was introduced to show that the situation complained of, which prevented the use of proper means for seasonably discovering and extinguishing the fire, was due to his negligence. We think the admissibility of this evidence may be tested by a con-

sideration of the question as to whether, in view of the existing facts, it would have been admissible to show that no one had been employed to superintend the wharf, or that the person employed as superintendent had been absent and had neglected his duties during a period prior to the fire, or that he was insane, infirm, or otherwise manifestly incapacitated for such position, or that he had in fact negligently caused or directed the care and stowage of the cotton, or had negligently supervised its location, and the means of discovering and extinguishing fires. "The question is, did the servant exercise ordinary care in the exercise of his duties?" Barrows on Negligence, 100. And we think it was proper to submit to the jury the facts as to his condition during the time while such alleged improper stowage and blocking was going on, in order that they might determine whether his condition was such that he could not have properly discharged his duties. The general rule is well stated as follows:

"Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience. Thayer's Cases on Evidence, 2, 3. 'If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury.' Insurance Company v. Weide, 11 Wall. 438, 440, 20 L. Ed. 197. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical rather than theoretical considerations. The guiding principle is well stated in Stephen's Digest of the Law of Evidence, c. 1, p. 36, in these words: 'The word "relevant" means that any two facts to which it is applied are so related to each other that, according to the common course of events, one, either taken by itself or in connection with other facts, proves or renders probable the past, present, or future existence or nonexistence of the other.' " Plumb v. Curtis, 66 Conn. 154, 166, 33 Atl. 998.

Error is next assigned to the admission of the following testimony:

John C. Trainor, a check clerk, who had been in the employ of the railroad company for about two months prior to the fire, testified by deposition as follows:

"Q. Were the gangways that you have stated ran across the shed— Were they straight, or how were they? A. They were usually straight. Sometimes the cotton might happen to fall off and block them a little."

Counsel for the railroad company moved to strike out the last half of the answer, as not responsive to the question. It appearing that no objection was taken to the question or answer when the deposition was given, the court overruled the objection, and counsel duly excepted. Irrespective of the claim that the objection should have been made at the taking of the deposition, we think the ruling was correct. The question was as to the condition of the gangways—"how they were"—and the first part of the answer, as to their usual condition, was not complete without the further statement as to their condition when bales of cotton blocked the gangways. The motion to strike out was not based upon

the remoteness, incompetency, or immateriality of the answer, but solely on the ground that it was not responsive.

The deposition of one Paul Lecorgne, another check clerk for the railroad company, was read, and the following questions and answers were admitted against objection:

"Q. Did you at any time ever notice how the cotton was piled around any of the hydrants?  A. Well, it was piled all around about nine tiers high. The cotton was piled higher than the hydrants.  Q. Where, in relation to the gangways, were the posts at which the hydrants were?  Do you recollect?  A. The hydrants were situated in the center of the shed.  Those hydrants were supposed to be left in a gangway. Some were, and others were not."

No ground of objection to the first question was stated. The exception to its admission, therefore, need not be considered. The second question was objected to on the ground that it was immaterial and irrelevant. The contention now made in support of these objections is that the testimony was irrelevant because it "was not limited to the time of the fire; but the questions themselves in the last two cases, and the answer in the first, showed that it related to conditions at any time during the time of the witness' employment upon the wharf, and not to the time of the fire, or immediately anterior thereto, and therefore was prejudicial to the defendant." It appears, however, that the first witness had only been in the employ of the railroad for about two months preceding the fire. The date of employment of Trainor, and Lecorgne's statement, "I worked at this checking business all the time during October and November, 1894," would indicate that they were only testifying to the condition of affairs on the dock shortly prior to the fire— the general situation alleged to be due to the continuous negligence of the railroad company, and which it was claimed directly caused or contributed to the loss. In the absence of any statement of objection at the time of taking the deposition on the ground of remoteness, and of any motion to strike out on said ground, we think the testimony was properly admitted, or at least that the general objection taken was properly overruled. New York Electric Equipment Co. v. Blair, 79 Fed. 896, 25 C. C. A. 216; Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299; Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306.

Error is further assigned to the admission of correspondence between Mr. Saterlee, the secretary and treasurer of the defendant, and its general manager, and to the examination of said Saterlee in connection therewith. Said evidence was objected to as immaterial and irrelevant. The objection was overruled, and the defendant duly excepted. An examination of this correspondence shows that all of the letters related in part to the situation of the cotton at Westwego, and to its accumulation there. This portion was certainly competent to show the knowledge on the part of defendant's officers of the increasingly dangerous conditions prevailing at Westwego, in connection with the evidence of its failure to take proper steps to remedy the situation. It is true that some of the correspondence related to other matters, but, inasmuch as no motion was made to strike out the relevant portions, the exception cannot be here taken to the correspondence on the ground that it was in-

competent and immaterial. Noonan v. Caledonia Mining Co., 121 U. S. 393, 7 Sup. Ct. 911, 30 L. Ed. 1061.

Error is next assigned to the admission of certain correspondence between the principal of a detective agency and the defendant's freight agent in regard to the outbreak of a fire on the wharf at Westwego on October 23d, prior to the present fire. This evidence contained a number of irrelevant hearsay statements, which were not proper for the consideration of the jury. Otherwise the letters were competent to show the knowledge of the defendant as to this prior fire. The admission of said correspondence was objected to, but no ground of objection was stated, and no motion was made to strike out the irrelevant testimony. The objection, therefore, need not be considered. Noonan v. Caledonia Mining Co., supra; Burton v. Driggs, supra.

Furthermore the court charged the jury on this point as follows:

"The statements made in the Boylan report regarding the fire at Westwego on October 24th, which were read to you by Mr. Cleveland, are not to be taken as proof of the facts therein stated. The report was admitted simply as evidence of notice to the defendant respecting that fire, and you must disregard the statements therein contained in making up your verdict."

The exception must therefore be overruled.

Error is next assigned to the admission of evidence as to labor disturbances at New Orleans, on the ground that these disturbances had nothing to do with the laborers employed at Westwego. Westwego is, however, situated opposite the city of New Orleans. There was evidence to show that these labor troubles had been caused by the employment of colored men on the ships, and that these ships were constantly docked and loading at Westwego. This testimony was introduced for the purpose, as stated by counsel, of raising the question whether, in view of said labor troubles, the defendant should not have increased the number of watchmen after the first fire. Upon motion of counsel for defendant that the testimony in regard to the labor troubles be stricken from the record, the court said as follows:

"It hardly strikes me that the testimony in reference to the labor riots should be expunged from the record, following the suggestion that the gentleman has just made. To a certain extent, it has a bearing upon the precautions which your clients should have taken in the preservation of the cotton—the fact that they knew."

The admission of the evidence as thus limited was proper, and the exception is overruled.

Error is further assigned to various refusals of the court to charge as requested by the defendant.

Under the exceptions to the refusal to charge requests 4, 13, 14, and 14a, the preliminary objection is made "that there is an entire absence of any definition of direct or proximate cause," and "that the court did not in its charge in any way convey to the jury any idea as to this distinction between a proximate and a remote cause." No statement of the distinction between a proximate and a remote cause was formulated in the requests presented, and no request for such definition was embodied in the requests to charge. No defini-

tion of proximate cause was included in the requests, except such as is contained in request No. 13, which was as follows:

"(13) You are instructed that not only must the plaintiff herein prove negligence upon the part of the defendant company in caring for the protection of said cotton against fire, but said plaintiff must show by a preponderance of evidence that the negligent act was the proximate or direct cause of the loss of said cotton by fire. The mere proof of a negligent act, without showing that said act was directly connected with, and was the immediate or proximate cause of, said fire, would not be sufficient evidence of the negligence of the defendant, for which it would be liable in this case. Within the meaning of the law, the proximate or direct cause of a loss is such a cause as that without such cause the loss could not have occurred."

In this request, and in requests 1 and 5, the words "proximate" and "direct" are treated as synonymous or equivalent words, or, taken together, as in the first request, are used as a mutually qualifying and explanatory term.

In conformity to said requests, the court charged the jury as follows:

"Was the defendant negligent in regard to its care and custody of the cotton in suit? And if you shall determine that it was so negligent, was that negligence the direct, proximate cause of the loss of the cotton? * * * The question for the jury to consider here is the situation in its entirety. Was the defendant, under all the existing circumstances and surrounding circumstances, on the night of November 12, 1894, guilty of negligence which directly resulted in the destruction of the cotton? is the question for the jury to consider. * * * In order to determine whether or not the defendant has been negligent in this case, and whether that negligence was the direct cause of the loss, you must first determine what the facts are. * * * The burden of proof to establish the liability of the defendant for the loss of the cotton in suit is at all times upon the plaintiff, and it is incumbent upon the plaintiff to prove by a preponderance of evidence the act or acts of negligence complained of against the defendant, and to show that such act or acts of negligence—some or all of them—contributed directly to the loss of the cotton. * * * Other negligent acts must be coupled therewith before the jury is entitled to find that the negligence directly contributed to the loss of the cotton. * * * The plaintiff was under no obligation to show the origin of the fire. He must, however, establish such facts as will warrant the inference that the defendant was negligent in respect to the cotton, and the further inference that because of that negligence the fire either originated or was allowed to spread, and thus to destroy plaintiff's cotton; * * * and, if from these facts you are enabled to draw the conclusion that the defendant was guilty of such negligence as directly and proximately contributed to the loss of the cotton in suit, your verdict should be for the plaintiff."

Also, in the portion of the charge quoted above, the court, after reviewing the specific allegations of negligence, said:

"Whether all or any of such facts, if they show negligence, show that kind of negligence which contributed directly and proximately to the loss of the cotton."

An examination of text-books and decisions on this question shows the difficulties in the way of framing such a definition of proximate cause as would have enlightened the jury and helped them in the decision of this case.

The Supreme Court of the United States says:

"And we have had cited to us a general review of the doctrine of proximate and remote causes as it has arisen and been decided in the courts in a great variety of cases. It would be an unprofitable labor to enter into an examina-

tion of these cases. If we could deduce from them the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discrimination." Insurance Company v. Tweed, 7 Wall. 44, 52, 19 L. Ed. 65.

"No general rule for determining when causes are proximate, and when remote, has yet been formulated." 7 American & English Encyc. of Law (2d Ed.) 382; Spaulding v. Winslow, 74 Me. 534.

In Fairbanks v. Kerr, 70 Pa. 86, 10 Am. Rep. 664, the court says:

"Many cases illustrate, but none define, what is an immediate or what is remote cause. Indeed, such a cause seems to be incapable of any strict definition which will suit in every case."

Judge Cooley, in his work on Torts, devotes several pages to propositions illustrating the principle, and approves the following definition from Addison on Torts:

"If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action."

"Proximate" is defined as "lying or being in immediate relation with something else," and, as synonymous with "direct" or "immediate." "Proximate cause: The nearest, the immediate, the direct cause; the efficient cause." Anderson's Dictionary of Law, 155. The word "direct" is defined as meaning "free from intervening agencies or conditions; hence characterized by immediateness of relation or of action." Standard Dictionary. And this is the meaning of a proximate cause, as stated by the Supreme Court in Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, where the court says:

"The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury."

A proximate cause is one from which the injury follows as a direct and immediate consequence. It is the dominant cause—the one that necessarily sets the other causes in operation. Cooley on Torts, 73; Insurance Company v. Boon, 95 U. S. 117, 24 L. Ed. 395.

If the court had seen fit thus to define proximate cause, and had further explained to the jury that it was not necessarily the nearest in time or place to the catastrophe, and that merely incidental causes are not proximate, or that, when "the wrong and damage are not sufficiently conjoined or concatenated as cause and effect to support an action," the cause is remote, or had stated the law still more elaborately as laid down in text-books and decisions, the objection now under consideration would have been obviated. But the object of a charge is to state the law applicable to the facts in such plain and simple language that it may be fully understood and intelligently applied by the average juror. And we think it is at least doubtful whether the jury in the case at bar would have derived any clearer idea of the law from such elaborate definitions in a charge, qualified as they must be by a statement of

the elements of time, conjunction of wrong and damage, inter-vening agencies, efficient as distinguished from instrumental causes, etc. If the court had further stated or illustrated the doctrine in its charge, it is doubtful whether such statement would have been sufficiently comprehended to be accurately applied, if sufficiently comprehensive to be accurate. We think, under the circumstances, that its failure so to do was not reversible error. The kind of negligence which contributed directly and proximately to the loss of the cotton, and "was the direct cause of the loss," and "directly resulted in the destruction of the cotton," would be to the mind of the average juror the immediate and efficient cause, without intervening causes, and therefore the proximate cause. If the court had charged the jury in the language of the Supreme Court in Scheffer v. R. Co., 105 U. S. 249, 26 L. Ed. 1070, the defendant would have had no ground of exception to the failure to define proximate cause. Said language is as follows:

"In order to warrant a finding that negligence or an act amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

But the court went further than this, and charged, in effect, that, in order to establish liability on the part of the defendant, it must appear that the negligence directly and proximately contributed to cause the loss.

We think, on the whole, that the language of the charge was quite as favorable to defendant as was required, under the circumstances.

But it is argued that counsel were entitled to have the jury instructed as to whether certain specific things were proximate or remote causes, as requested in requests 4, 14, and 14a. These requests cover the alleged negligence in the management of the wharf, the stowing and protection of cotton, the inadequacy of the force of watchmen, and the insufficiency of the apparatus for extinguishing fires. The charge of the court had fully covered the general propositions of law applicable to the case, and had instructed the jury to consider the situation in its entirety, and to determine the question of defendant's negligence, and whether such negligence, if found, was the direct and proximate cause of the loss. The court was not bound to charge, as requested, 4, 14, 14a, and 19, assuming those requests to be technically correct, because they singled out particular circumstances, omitting others of equal importance, when the general charge of the court had sufficiently covered the whole situation. The general rule applicable to this subject is well settled by the decisions of this court and of the United States Supreme Court:

"It is much the better practice to refuse to give instructions to the jury, the substance of which has already been stated in the general charge, than to repeat the same charge in different language, although the charge requested may be technically correct as an abstract proposition of law, for a multitude of instructions, all stated in different language and meaning the same thing,

tends rather to confuse than to enlighten the minds of the jury." New York, Lake Erie & W. R. Co. v. Winter's Adm'r, 143 U. S. 60, 75, 12 Sup. Ct. 356, 36 L. Ed. 71.

Rio Grande Western Railway Co. v. Leak, 163 U. S. 280, 16 Sup. Ct. 1020, 41 L. Ed. 160; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Texas & Pacific Railway Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132; Pennsylvania R. Co. v. Palmer, 127 Fed. 956, 62 C. C. A. 588.

The fifth request to charge, which was refused, is as follows:

"(5) If the jury find that there was any delay in forwarding the cotton from Westwego by reason of the negligence of the defendant railway company, or by reason of the failure of the ocean carriers to send for and take away the cotton as it was received at Westwego, and that but for the defendant's negligence in failing to forward the cotton from Westwego, or the ocean carrier's failure to receive and take it away, it would not have been in the cars or under the sheds at the time the fire occurred, such negligent delay in forwarding would not make the defendant liable in this case, for the reason that such negligent delay would, in law, be the remote, and not the direct and proximate, cause of the destruction of the cotton."

We think defendant was entitled to this charge. It states the law as laid down by the Supreme Court of the United States in Railroad Company v. Reeves, 10 Wall. 176, 19 L. Ed. 909; and inasmuch as the jury might, on the evidence, have found negligent delay, without instructions that such delay was not the proximate cause, they might have been misled into rendering a verdict for plaintiff on the ground of delay. The question is whether this request was practically covered by the charge of the court. The court charged the jury, inter alia, as follows:

"All the various questions relating to the accumulation of cotton on the Westwego wharf just prior to the fire; the sufficiency and efficiency of the care and custody of the cotton by day and by night; whether the watchmen at night, if sufficient, were competent, as firemen, to protect the cotton from fire; whether it was necessary that those in charge of the cotton should have been given reasonable instructions, at least, in the way of managing the fire apparatus; whether the various appliances for extinguishing the fire were such as should have been provided under the circumstances as they then existed; whether access to the appliances was rendered difficult by the manner in which the cotton was piled; whether the appliances themselves could be properly handled, under the circumstances of the case, by those within reach of the cotton on the night of the fire; whether any other facts upon which the plaintiff may rely to establish negligence on the part of the defendant do, in your minds, accomplish that result; and further whether all or any of such facts, if they show negligence, show that kind of negligence which contributed directly and proximately to the loss of the cotton. All these questions, as I said a minute ago, are for you to decide, and upon that decision your verdict will rest."

If this were all that the court had said upon this question, there might be ground for holding the exception well taken. But in its charge the court, after having fully explained to the jury the rule as to reasonable care, also said as follows:

"In order to find the defendant free from negligence, the jury must find that the degree of care exercised on the night of November 12, 1894, was commensurate with the risk as it then existed. The accumulation of cotton on the Westwego wharf at the time of the fire, no matter for what reason it had accumulated, is not alone and by itself enough, even if found to be an act of

negligence, upon which to base a verdict for the plaintiff. Other negligent acts must be coupled therewith before the jury is entitled to find that the negligence directly contributed to the loss of the cotton."

The exception is therefore overruled.

The sixteenth request is sufficiently covered by the charge of the court.

The eighteenth request to charge is as follows:

"(18) Defendant's servants engaged upon said wharf were only called upon to exercise and use ordinary care, and when suddenly called upon in an emergency of the discovery of a fire in the cotton they are not to be held to the exercise of the same degree of caution as in other cases, nor is the defendant to be held liable because of a failure to exercise the best judgment which the case rendered possible. If, when confronted with the sudden emergency of the discovery of the fire, the watchmen employed by the defendant used their judgment, and undertook by the aid of the appliances furnished by it to extinguish the fire, the defendant would not be liable, even if you find that the watchmen did not employ the fire extinguishing apparatus to the best advantage, or exercise the best judgment in using the same."

We think this request was properly refused because it failed to contain any reference to the fact that, if the condition which conduced to the alleged error of judgment was the direct result of the negligence of the defendant, then it would be liable therefor. Marande v. Texas & Pacific Railway Co., supra.

The judgment is affirmed, with costs.