## LOUISVILLE & N. R. CO. v. WILSON.

(Circuit Court of Appeals, Sixth Circuit. · June 6, 1911.)

No. 2,110.

1. MASTER AND SERVANT (§§ 286, 289*) — ACTION FOR INJURY TO SERVANT — QUESTIONS FOR JURY.

Plaintiff's intestate was a freight conductor on defendant's railroad, and on feeling a sudden shock while riding in the caboose rushed upon the platform to look ahead, when the two parts of the train, which had separated, came together with such force that he was thrown to the track and killed. The separation of the train was due to the opening of a coupler on a car which had been taken into the train at the station last passed, which came uncoupled again a short time later. There was evidence tending to show that the pin which held the two parts of the coupler in place was worn and fitted loosely and might have been thrown up by the movement of the cars. *Held*, that the question of defendant's negligence in permitting the continued use of a coupler so defective from wearing, and also the question of the contributory negligence of deceased in going upon the platform, were both properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050, 1089–1132; Dec. Dig. §§ 286, 289.*]

2. MASTER AND SERVANT (§ 246*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A master through whose negligence a servant has been placed in sudden peril cannot require of the servant the same measure of prudence and care which one having time for reflection might be expected to exercise.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 789–794; Dec. Dig. § 246.*]

3. MASTER AND SERVANT (§ 289*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A rule of a railroad company, requiring conductors to "examine couplings, wheels, journals and brakes of the cars in their trains while on the road as often as their duties will permit," did not impose on the conductor of a freight train such an absolute duty to inspect the couplers of a car taken into his train at a way station as to charge him as a matter of law with contributory negligence which would preclude a recovery for his death because he failed to discover an obscure defect in one of such couplers, in consequence of which his train broke in two and he was killed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

4. MASTER AND SERVANT (§ 288*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

A conductor of a freight train cannot be held as matter of law to have assumed the risk from a defective coupler which it was the duty of the railroad company to maintain in good order, where the defect was not obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

5. MASTER AND SERVANT (§ 264*)—ACTION FOR INJURY TO SERVANT—PLEADING—VARIANCE.

Where the declaration, in an action against a railroad company to recover for the death of a conductor, alleged that he was thrown "out of"

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the caboose in which he was riding, evidence that he was thrown from the platform of the caboose did not constitute a material variance.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Action by Nell Moore Wilson against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Albert W. Biggs and John B. Keeble, for plaintiff in error.

Jere Horne, for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SEVERENS, Circuit Judge. The defendant in error brought this suit in a court of the state of Tennessee, from whence it was removed into the Circuit Court of the United States for the Western District of Tennessee upon the petition of the railroad company. Its object was to recover damages alleged to have been sustained by her in consequence of the death of her husband through the negligence of the railroad company, and is founded upon a statute of that state giving such a remedy.

Charles Wilson, the husband, was at the time of the accident which caused his death in the employment of the railroad company as a conductor of a freight train running between Paris, Tenn., and Guthrie, Ky. Proceeding from Paris on February 7, 1907, he stopped at a minor station called Erin and took a freight car standing there into his train. When the train was connected up for its further journey, this car was in the midst, ahead by several other cars of the caboose which was at the rear end of the train. After the train had proceeded three or four miles, Wilson, who was having a lunch in the caboose with Porter, an assistant trainmaster of the company, and Brown, a flagman, experienced a sudden shock which startled them. They surmised that the train had broken in two. Wilson rushed to the forward platform of the caboose and looked around the cars ahead to see what had happened. A curve in the road prevented his sight. He turned to the other end of the platform where he would have a better view. At about this moment, the rear section of the train came into violent collision with the forward part, Wilson was thrown down upon the track, where he was fatally injured by the passing wheels, and shortly after died. On examination, it appeared that the train had fallen apart from the opening of the coupler on one end of the car taken in at Erin. By the impact of the collision the coupler had been closed again. The train got under way, and, after going a few miles further, the train parted again by the opening of the same coupler. Thereupon the parts of the coupler were secured together by wires, and the rest of the journey was made without accident. Shortly thereafter this coupler was taken apart and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

carefully examined by the company's experts. The substance of their testimony was that they could find no particular defect and that they were unable to account for its coming apart, unless it happened from the becoming loose of the pin or block which normally drops down into a space in the inside of the arms of the coupler when closed and secures them in that position. The coupler is unlocked by raising the pin out of the space between the arms. The pin was found to be worn and it fitted loosely in its place. From the evidence in the record, it would seem that the jury would probably turn to these facts and conclude that the accident happened from the loose and imperfect co-operation of the pin and the arms of the coupler, by reason of which the pin might be thrown up by the agitating movement of the cars.

Upon the trial of the case before a jury the defendant, after the testimony was in, moved the court to instruct the jury to find a verdict in its favor. This was refused, and the case was submitted. The plaintiff recovered a verdict for $10,000. There was a motion for a new trial, which was denied. Thereupon a judgment was entered in conformity with the verdict.

It should be noted that the declaration founded the plaintiff's right to recover upon the principles of the common law. Subsequently, the plaintiff obtained leave to amend, and thereupon an amended declaration was filed in which was included a charge that the defendant was negligent, in that while it was engaged in interstate commerce it failed to comply with the requirements of the federal safety appliance acts in respect to the couplings. But, when the case came on for trial, the defendant moved that the amendment be stricken out, and, the plaintiff consenting thereto, the court granted the motion, and the cause proceeded to trial upon the original declaration. Upon the hearing in this court, these conditions have been observed, and no reference has been made to the question whether the defendant was at the time engaged in interstate commerce, or to the obligations assumed by a railroad company in respect to the couplings of its cars when so engaged.

Three leading propositions were involved in the issues and were controverted before the jury:

First, was the defendant negligent in permitting the car to be used while in a defective and dangerous condition?

Second, was the plaintiff's deceased husband guilty of negligence in failing to properly inspect the couplings of the car when he took it into his train at Erin?

Third, whether, as contended by the defendant, the deceased husband assumed the risk of conditions such as existed in the couplings of the car in question.

[1] Upon all these questions the court stated to the jury correctly the general rules of law pertaining to the relative duties of the employer and the employé in such cases. We are of opinion that the court properly submitted the case to the jury, instead of assuming the material facts to be incontestable. First, the jury might not unreasonably have found that the coupling was defective and dangerous

from the uncontradicted facts that it opened while in ordinary use and opened a second time in the same circumstances soon after, and the further testimony concerning the worn and loose condition in which the parts were found on subsequent examination. These facts would tend also to indicate that the defects had existed for some time—long enough to have been discovered by proper inspection.

[2] Second, upon the question whether the deceased conductor was guilty of contributory negligence in rushing out upon the platform of the caboose to find out what was the trouble with his train, instead of remaining in the caboose until the danger was passed or going up into the lookout, a place of comparative safety, to obtain a view, the jury might well have thought that the exciting character of the circumstances in which he was placed ought to excuse him from that degree of prudence and regard for his own welfare which a man would exercise upon deliberation in cooler moments, and that the employer whose negligence had led to the peril ought not to be heard to require of its servant that measure of prudence which one having an opportunity for reflection would be expected to exercise. Such is the general rule of law applicable to the conduct of men in emergencies not resulting from their own fault. Labatt on Master & Servant, § 358; Kane v. Northern Cent. R. Co., 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; Union Pac. R. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Killien v. Hyde (D. C.) 63 Fed. 172; Marande v. Texas & Pac. R. Co., 102 Fed. 246, 42 C. C. A. 317; and 29 Cyc. 521, where many cases are cited.

[3] It is urged for the defendant that the plaintiff was also guilty of contributory negligence, in this, that there was a rule of the company which required the conductor, when taking in freight cars at stations where there was no inspector, to see that they are in a safe condition, and that this duty extended to an inspection of its couplings. And it is contended that, it not appearing that Wilson made such an inspection, he should be held guilty of such contributory negligence as to prevent a recovery. This is assigned as a reason why the court should have directed a verdict. The testimony incorporated in the bill of exceptions concerning the supposed rule leaves the subject in doubt. The testimony of officers of the company was to the effect that there was such a rule, and one of them produced on cross-examination a printed·book of rules, and among them there was found this:

"Conductors must examine couplings, wheels, journals and brakes of the cars in their train while on the road as often as their duties will permit."

And this rule was put in evidence. It is fairly inferable, and the jury might have understood that the witnesses just mentioned, when they testified about the duties of conductors, were giving their opinions of what this rule required. The jury were not bound to accept this interpretation of the rule. Indeed, it is proper to say that it is not fairly susceptible of a construction which absolutely imposed the particular duty of inspecting the coupler of this car taken in by Wil-

son at Erin. And no other rule of the company concerning this subject was produced. It might properly have been inferred, from the failure to produce it, that in fact there was no other. Moreover, the testimony offered by the company to exonerate itself from fault in using this coupler tended to show that, upon a careful and painstaking examination of the coupler made after the accident, no defect was discovered which should have caused the accident. Yet it is now urged that the defect was so obvious that the conductor, occupied with the whole care of the train, ought to have observed it. Between these inconsistent propositions, the jury might find a middle ground and say that the defect was grave enough to show a failure to give proper inspection on the part of the company, but not so grave as to be obvious to such inspection as the conductor would be bound to make under a duty to examine the cars in his train "as often as his duty will permit." The defect in the coupler was not apparent to observation of external indications, but would be likely to require a somewhat critical examination of its interior parts.

[4] Third. Did the conductor assume the risk of this coupler being, or becoming, out of order? The duty of maintaining it in order was a duty of the company. The conductor assumed only those risks which were obvious or which would have been ascertained by a proper discharge of his duty. What we have said upon the subject of his contributory negligence applies equally to this of his alleged assumed risk. Though not the same, they are often closely related defenses, especially when the alleged negligence consists in not discovering that the master has not performed his duty in making safe the conditions in which the employé is required to perform his service. The principles of law applicable to the case are familiar. The questions of fact were for the jury, and it is impossible to say upon this record that, as matter of law, the jury manifestly erred in its conclusion upon any of the substantive facts which would entitle the plaintiff to recover.

[5] It remains only to notice that the defendant proposed certain specific instructions, five in number, which were all refused. There was a general exception. In order to make the exception available, it must appear that all of the requested instructions ought to have been given. Some of them had been substantially covered by the instructions already given. One of these specific instructions requested was this:

"It is alleged in the declaration that the deceased, Chas. Wilson, was thrown out of the caboose in which he was riding as conductor, and which was his post of duty, etc. Plaintiff's evidence shows that he was not in the caboose, but on the platform of the same immediately before his injury. Therefore there can be no recovery under this declaration."

The supposed variance was not material, and should have been disregarded. To have required the jury to make their verdict turn on so nice a distinction as this might have led to a miscarriage of justice.

There are no other questions of sufficient merit to require further discussion.

The judgment must be affirmed, with costs.